PURCELL COTTON SEED OIL MILLS VS BELL ET AL.    .

(104 S. W. Rep. 945).

*Conversion -- Evidence.*

Evidence was held sufficient for defendant to establish conversion.

2. *Same—Demand.*

  It is not necessary for demand for the property to be shown in an action for conversion; the act of conversion asserting the ownership.

3. *Appeal—Error.*

  Since it is unnecessary for demand for the property to be shown in conversion the error was harmless which permitted plaintiff to make such proof.

4. *Trover—Conversion.*

  To prove their ownership and right to possession in an action brought for converting cotton seed hulls plaintiffs could prove payment of the price of the hulls.

5. *Trial—Instructions to Jury.*

  In an action brought for converting cotton seed hulls, where the court did not state the issues to the jury, it was error to refuse to instruct in such a manner as to convey a clear statement of the case.

Error to the United States Court for the Southern District of the Indian Territory; before Justice Hosea Townsend, April 11, 1900.

Action by J. E. Bell and another against the Purcell Cotton Seed Oil Mills. From a judgment for plaintiffs, defendant brings error. Reversed and remanded.

Bell and Mays, the plaintiffs below and defendants in error here, were engaged in feeding cattle at Purcell; and for that purpose used largely cotton seed hulls, which they obtained from a house in Memphis. In making their purchases, they would do so by and through the Purcell Cotton Seed Oil Mills, a corporation, defendant below, plaintiff in error here. The particular car load of hulls the conversion of which is charged by the complaint was ordered by defendant and came to Purcell in car No. 903, which was set out on the track of the defendant at the mill. It arrived on February 3d, and was put on the track the next day. The railway company executed its receipt to the defendant for the freight. On February 3d, the day that car No. 903, loaded with the hulls, arrived, the plaintiff, by a check on the Chickasaw National Bank of Purcell, including

this item with a number of others, amounting in the aggregate to the sum of $715.76, paid the defendant for the hulls, and turned the bill of lading over to them. The records of the railroad company show that on February 15th the car No. 903 was empty. The plaintiff testified that they did not know what became of the car load of hulls. Mr. Williams, manager of the defendant company, testified that the books of the company showed that plaintiffs used them; but the record was not produced. The value of the hulls was shown to be $212.45. Counsel for plaintiff in error has filed a brief in which he neither quotes from, cites, nor refers to a single authority. Counsel for defendant in error, although a year ago, when this case was submitted, earnestly requested and procured leave of the court to file brief within 20 days thereafter, has filed none. We merely mention this fact for the purpose of emphasizing our thanks for and high appreciation of the aid we have received from counsel by their energetic and exhaustive search for and presentation of the law of the case.

*J. F. Sharp*, for plaintiff in error.

*Dorset Carter*, for defendant in error.

CLAYTON, J. (after stating the facts as above). At the close of plaintiffs' testimony, a demurrer to the evidence in short upon the record was interposed, and a verbal motion to instruct the jury to find for the defendant, on the ground that there was no evidence to prove a conversion by the defendant, and that the proof did not show any liability on the part of defendant. The demurrer and motion were overruled, and exception saved. And this ruling is made one of the specifications of error.

The proof clearly shows, and it was admitted by Mr. Williams, the defendant's manager, that the car load of hulls in question was the property of the plaintiff; and it was also shown without any contradiction that it was sent for by defendant and was in its possession and custody under such

circumstances as to require it to use ordinary diligence at least to care for it, and, on demand, to turn it over to plaintiffs. Some days after the arrival of the car, and after it had been paid for, it was found empty on defendant's mill tracks. The plaintiffs testified that they had no knowledge as to what became of the hulls; and up to the time the demurrer to the evidence was interposed this was all of the proof as to whether or not the defendant had converted them to its own use; but, as it was shown that they were in defendant's possession under such circumstances as that it wasi ts duty to look after them and care for them, it ought to have known what became of them, and, being charged with their conversion, it was sufficient to call for proof on his part. The circumstance was some e idence from which an inference might be properly drawn of a conversion, and, as there was no proof to the contrary, it was the preponderance of the evidence. The court then charged the jury, and at the conclusion of the charge the defendant asked the court to charge the jury that, as there was no evidence of a demand by the plaintiffs before bringing the suit, to find for the defendant. The court then permitted the plaintiffs, over the objection of defendant, to reopen their case and prove the demand, although no such an allegation was made in the complaint, and it was not amended to show that fact. This request was overruled, and exception saved.

The suit was not for the recovery of the property. If it had been, a demand would have been necessary to be both alleged and proven, but conversion was charged, and the suit was for the value of the property. Judge Cooley, in his work on Torts (volume 2 [3d Ed.] 870), lays down the rule to be that: "Where the defendant has come into the possession of property lawfully, or without fault, it is in general necessary to make demand of possession of him before suit will lie. 'What is meant by one coming lawfully into possession of the property

is where he finds it and retains it for the true owner, or where he obtains the possession of the property by the permission or consent of the plaintiff, as where the relation of bailor and bailee exists.    In this latter class of cases a demand and refusal would be necessary, unless it could be shown the defendant had appropriated the article so found to his own use, or had disposed of the property bailed contrary to the terms and stipulations of the contract of bailment.    An instance has been given of an abuse of the contract of bailment in the case of property hired for one purpose and appropriated or used for another.    In such a case the abuse terminates the bailment, and the owner may retake his property without demand, or sue for its value.'' Where there is a conversion of the property, there is by the very act an assertion of ownership, and in such case in a suit for the value of the property no demand is necessary; and therefore, while the court permitted proof of a demand to be made, and while it was immaterial, we cannot see how the defendant can possibly be prejudiced by it.    And, as the only evidence the defendant offered at the trial was introduced after the case was reopened and the plaintiff at that time offered no evidence except in relation to the demand, we do not see that he had any right to complain that it was reopened.

The third specification of error is "that the testimony of the plaintiff Bell, relating to a settlement between the parties, which was objected to by defendant, should not have been permitted to go to the jury.''    The assignment does not "quote the substance of the testimony objected to," as required by rule 11 of the Circuit Court of Appeals for the Eighth Circuit (150 Fed. xxvii, 79 C. C. A. xxvii) in force here.    But we have examined it from the record.    The settlement referred to included the payment of the $212.45, the price of the car of hulls in question, and was one of the evidences of the fact that the property belonged to the plaintiff, and that they were entitled to its possession, or, if converted, to its value, and therefore the court did not err in permitting it to go to the jury.

Another objection is that Bell was permitted to answer leading questions propounded to him by plaintiffs' attorney. This is very largely within the discretion of the court; and, upon examination of the record, we find this discretion was not abused.

The tenth specification of error is that the court erred in refusing to instruct the jury at the request of the defendant, as follows: "That, in order for the defendant company to have been guilty of the conversion of the car load of hulls in controversy, it is first necessary that the plaintiff should prove the ownership of the car of hulls, and further prove that at the time they were in possession thereof, or entitled to the immediate possession; and, second, to also prove the allegations in their complaint, that the hulls in question were unlawfully converted by defendant to its own use and benefit." The charge of the court to the jury, in its entirety, was: "Gentlemen of the jury, the plaintiff in this case has sued for the value of a car load of hulls. The burden is upon the plaintiff to establish by a fair preponderance of the evidence the allegations and statements that he makes in his complaint. You are the sole judges of the weight of the testimony and of the credibility of the witnesses who have testified. The question of fact is one exclusively for your consideration. If you are satisfied from the evidence that the statements and allegations in the plaintiff's complaint have been established by a fair preponderance of the evidence to your satisfaction, your verdict should be a verdict for the plaintiff for such an amount as the proof may show you the plaintiff would be entitled to recover. If you are not so satisfied your verdict should be a verdict for the defendant." Upon an analysis of the charge, it will be seen, first, that the issue presented by the pleadings are no where stated by the court; second, that the jury are referred to the complaint to ascertain the issues; third, that the burden of proof is on the plaintiff; and, fourth, that the jury are the sole judges of the weight of the

testimony and the credibility of the witnesses—and that is all. The mere statement by the court that "the plaintiff in this case has sued for the value of a car-load of hulls" is not the statement of any issue.    It is simply the statement that the suit was brought for that purpose; and, when the jury were told that "the burden is upon the plaintiff to establish by a fair preponderance of the evidence the allegations of the complaint," not having been told what those allegations were, they were sent to the complaint to find them for themselves, and left to construe them.    The denials of the answer were not mentioned, nor the defense presented to them; but they were simply to go to the complaint, and determine, after weighing the evidence, if the allegations therein contained had been proven by a preponderance of the evidence.    The complaint was not introduced in evidence, and, as far as the record shows, had not been read or its contents stated to the jury.    However far appellate courts may have gone in holding that mere nondirection is not error, all, except Mississippi and those states which, like it, have a statute that courts shall not charge juries at all unless requested, hold that it is the duty of the court to always present to the jury the issues being tried, and more especially so when requested.    And it is by the great weight of authority held that to simply refer the jury to the pleadings for the issues without stating or even reading them to the jury is error.    "It is the duty of the court to determine the issues, and to state them to the jury.    And it is error to refer them to the pleadings to determine the issues, in whole or in part."    Thompson on Trials, § 2314.    "The court should not refer the jury to the pleadings for information as to what the issues are, unless by consent of the parties."    Abbott's Trial Brief, Civil (2d Ed.) 435.    "The difficulty which even judges of learning and experience often encounter in defining the issues as joined in the pleadings is argument sufficient in support of the rule.    It surely would not conduce to a full and fair trial if jurors, in-

experienced in such matters, were left to determine the issues from the pleadings. The necessity of the judge defining the issues is too apparent to be questioned, and, however pressing the demands may be upon the time of the court, a plain and concise statement of the issues should always be given to the jury." Burns vs Oliphant, 78 Iowa, 456, 43 N. W. 289. "It is the province of the court to determine the issues and state them to the jury, and not leave them to ascertain the effect of the pleadings or the issues which they present." Myer vs Moon, 45 Kan. 580, 26 Pac. 40. See, also, Britton vs St. Louis, 120 Mo. 437, 25 S. W. 366; Robinson vs Berkey, 100 Iowa, 136, 69 N. W. 434, 62 Am. St. Rep. 549. "The rule elsewhere stated, that nondirection will be no ground of reversing a judgment, unless a specific direction upon the omitted point or element of the charge is requested and refused, has been applied to an imperfect statement of the issues. The party desiring a more specific statement of them must call the attention of the court thereto by a request for a correct instruction, in order to secure a review of the instruction by an appellate court. Moreover, in determining whether the jury have been properly instructed, the substance and effect of the instructions, taken as a whole, will be considered, and not merely their form or orderly arrangement. It follows that the mere fact that the court in stating the issues to the jury may have omitted to state fully the nature of the defense set up in answer will not be prejudicial error if the defense is fully and fairly presented in the subsequent instructions given." 2 Thompson on Trials, § 2314. In this case the answer was not even referred to. It was only a denial it is true, but it joined the issue, and was a statement of the defense, and the issue was not imperfectly stated by the court, but not stated at all. But, even if it were proper to refer to the complaint, as the jury do not take the pleadings with them to the jury room, the contents should either have been stated, or the complaint read to them. And when it

is considered that the pleadings are often couched in technical language, and the difficulty that the courts themselves sometimes have in determining what the issues really are, the necessity for their construction and a plain statement of them in the language of the court is obvious. The defendant was not satisfied with the charge, and asked an instruction which, in effect, plainly told the jury that, to maintain the suit, the plaintiffs must first prove that they were at the time of the conversion the owners of the property; second, that at that time they were either in possession, or entitled to the possession; and, third, that the defendant unlawfully converted it to their own use. In other words, the ownership of the property, being denied, was an issue, the right of possession, being denied, was an issue; and the conversion by defendant, being denied, was an issue, all of which, under the law, must have been proven to entitle plaintiffs to a verdict. This was a clear statement of the issues raised by the pleadings, at least one with which the defendant was satisfied; and, as the court had failed to instruct the jury at all as to what the issues were, it was error to refuse it.

Reversed and remanded.

GILL, C. J., and TOWNSEND and LAWRENCE, JJ., concur.