## BILBY v. JONES.

No. 3223.   Opinion Filed November 11, 1913.

(136 Pac. 414.)

1. **TROVER AND CONVERSION—Evidence—Sufficiency.** The evidence sufficiently supports the verdict.

2. **JUSTICES OF THE PEACE—Attachment—Service by Publication—Sale of Property Attached.** A sale of chattels taken under a writ of attachment, where there has been no personal service of summons on the defendant, and no appearance by him in the suit, and the case is not one allowing service by publication, is void.

3. **EXECUTION—Wrongful Attachment—Liability of Purchaser at Sale.** Corn belonging to plaintiff having been taken and sold under a void judgment and writ of attachment, the purchaser at such sale is liable in conversion for the value of the corn, and especially where such purchaser was the plaintiff and moving cause in the void proceedings in which the sale was made.

4. **TROVER AND CONVERSION — Definition — "Conversion."** "Conversion" is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.

5. **SAME—Necessity of Demand.** In a suit for the conversion of personal property, where the possession was taken and at the time of suit maintained wrongfully, no demand is necessary before bringing suit. The wrongful taking and conversion is an assertion of ownership.

(Syllabus by Brewer, C.)

*Error from County Court, Wagoner County;*
*Leon B. Fant, Judge.*

Action by James M. Jones against John S. Bilby. Judgment for plaintiff, and defendant brings error. Affirmed.

*F. B. Righter,* for plaintiff in error.

*Judson J. Hughes,* for defendant in error.

Opinion by BREWER, C. This suit was brought by the defendant in error, as plaintiff below, against the plaintiff in error, as defendant, to recover the value of something over 900 bushels of corn alleged to have been converted by the defendant and alleged to have been of the value of $478.12, and also for the recovery of additional damages to cover the expense of time and money expended in pursuing the property.

The defendant Bilby answered with a general denial. The facts out of which the suit arose may be briefly summarized as follows: The plaintiff Jones cultivated 40 acres of land belonging to the defendant Bilby during the year 1909 and agreed to give as rental for said land one-third of the crop of corn grown thereon. After the maturity of the crop, a portion of it had been gathered and a portion of it was ungathered in the field. The defendant on November 6, 1909, procured the issuance of a writ of attachment out of a justice of the peace court to cover rents of the land alleged to be due him in the sum of $200. This writ was levied upon all the corn upon the place, both gathered and ungathered. The return of the officer showed the amount of the corn to be 922 bushels; the appraisement showing it to be of the value of $431. The corn was sold under two orders of sale issued by the justice of the peace and based on a judgment by default; the plaintiff in the justice court and defendant in this suit being the purchaser thereof at both sales. The contention of the plaintiff here is that the judgment of the justice of the peace, together with the proceedings had, and the sale made thereunder, were absolutely void and unlawful for the reason that no summons was issued by the justice of the peace or served upon him in the suit, and that he had not entered his appearance or been advised of the day set for trial. The defendant undertook to show by testimony that a summons had in fact been is-

sued and served. The question of whether or not a summons was issued and served seems to have been the pivotal issue in the case. The jury returned a verdict in favor of the plaintiff, allowing him $315 as the actual value of the corn converted and $185 additional damages for the trouble and expense he had been put to in relation to the same. On plaintiff's own motion the court permitted him to remit this last item of damage and rendered judgment in his favor on the verdict for the value of the corn.

The defendant, as plaintiff in error here, raises a number of questions, only a limited number of which, however, will require our consideration.

The first point, which goes to the sufficiency of the evidence, cannot be sustained. The justice of the peace who issued the attachment, together with his docket and files, and the constable who made the levy and the sale, were all before the court and jury. The docket of the justice failed to show the issuance or return of a summons, or even the date of the supposed trial, nor was a summons found in the jacket containing the papers or in the office of the justice, nor could it be produced. The justice stated when pressed, and with some apparent hesitancy, that he had issued a summons. The constable testified to making the levy and the sale, gathering and caring for the corn, but could not be induced to say that he served a summons in the case. The evidence, fairly considered, impresses us, and must have so impressed the jury, that in fact he did not have or serve a summons. The defendant testified positively that no summons was served upon him; that when the constable made the levy on his corn he tried to learn when he could appear in court, having the constable read the second time the order of attachment, which contained no summons or notice of a day set for trial. Defendant also testified that he sought out the justice of the peace, finding him in his field, and sought to learn if his case had been set for trial, and when, but could get no satisfaction or information from the justice. There was therefore, to our minds, an ample showing made that no summons was issued

or served or other notice given the plaintiff of a time when he might appear and defend his rights. A reading of the entire record so impresses us.

Under this evidence the court instructed the jury in substance that if it should find, from a preponderance of the evidence, that no summons had been served in the justice of the peace court, and that defendant had purchased the corn under a sale made in such suit, then the sale and the defendant's possession of the corn, under such sale, was unlawful, and that if they so found the facts the plaintiff would be entitled to recover the value of the corn, at the time it was so taken, after making allowance and deducting the value of the corn that was going to the defendant for his rents for the land.

This squarely presents the question: Is a sale of chattels under an attachment absolutely void, in a case wherein there has been no service of summons personally and no appearance of the defendant has been entered and the case is not one in which service may be made by publication? In such situation we think the proceedings in attachment and a sale thereunder were void.

Section 5359, Rev. Laws 1910, provides that actions before justices of the peace are commenced by summons or by appearance and agreement of the parties. If commenced by summons, the action is deemed commenced upon delivery of the same to the officer. If commenced by appearance and agreement of the parties, the action is deemed commenced at the time of docketing the case. Section 5361, Rev. Laws 1910, provides that the summons shall be dated the day it is issued, signed by the justice, directed to the proper officer, must contain the name of the defendant, if known, and must command the officer to summon the defendant to appear before such justice at his office, at a time specified therein, and must describe the plaintiff's cause of action sufficiently to apprise the defendant of the nature of the claim against him. It must show the amount for which the plaintiff will take judgment if the defendant fails to appear. Section 5366, Rev. Laws 1910, provides that the plaintiff in a civil action may have an attachment against the property

of the defendant, upon certain grounds mentioned, "at or after the commencement thereof."

In the case of *Ballew v. Young et al.,* 24 Okla. 182, 103 Pac. 623, 23 L. R. A. (N. S.) 1084, the question of the validity of an attachment and the proceedings and judgment therein, where the defendant was a nonresident, and the affidavit to procure service by publication was invalid, was before the court; and the effect of such invalid service upon the proceedings was exhaustively considered, in an opinion by Mr. Justice Hayes, and it was held that a judgment rendered in such case was not merely voidable but void and subject to collateral attack. Sections 5 and 6 of the syllabus follow:

"(5)  A judgment rendered in an attachment proceeding, wherein the service was by publication which was so defective as to be not merely voidable but void, is void upon collateral attack, and one who intervenes in an attachment proceeding and claims the real estate attached may attack such judgment after it is rendered or may attack such service before the rendition of judgment by motion to vacate and set aside such judgment or such service.

"(6)  In an action against a nonresident, in which an order of attachment was issued at the time of the filing of the petition, and on the same date an affidavit for service by publication was filed, and the first publication was made within 60 days from the date of the filing of the petition, but the affidavit for service by publication and the publication notice were so defective as to be absolutely void, *held,* that a motion to dissolve and discharge the attachment and dismiss the action, made more than eight months after the filing of the petition, levy, and return of the order of attachment, was properly sustained for the reason that the action had not been commenced."

A reading of that case clearly shows, and it must necessarily follow, that, if the judgment obtained upon a fatally defective affidavit for publication against a nonresident defendant is void, the judgment must be void against a resident defendant living within the jurisdiction of the court, where no summons has been issued and placed in the hands of the officer or served upon the defendant, if for no other reason, because, under the statute, no action has been commenced against him.

It is true as pointed out in *Ballew v. Young, supra,* that there is a conflict of authorities on the question of whether or not an attachment issued and levied in a case, where there has been no proper service, is void or merely voidable, but this court is committed to the proposition that such proceedings are void. In the last-mentioned case it is said:

"Commenting upon the conflict among the authorities upon this question, it is said in 4 Cyc. p. 814: 'In some jurisdictions it has been held that the court acquires jurisdiction over the property by a valid levy thereupon, and its judgment in regard thereto is binding until reversed on appeal or set aside in some direct proceeding for that purpose, but the weight of authority, if not of reason, is to the effect that the jurisdiction acquired by the seizure of the property is not to pass absolutely upon the rights of the parties but only to pass upon such right after defendant has been given an opportunity to appear and defend; and, where this view is maintained, a judgment, rendered without the notice prescribed by law against a defendant who has not appeared, is deemed absolutely void and open to collateral attack' "—citing authorities.

The doctrine of the Kansas cases is in harmony with this expression of the rule in Cyc., and they are controlling upon us.

The corn having been taken and sold under a void judgment and attachment, the purchaser at such sale is liable in conversion, and especially where such purchaser was the plaintiff and moving cause in the void proceedings in which the sale was made.

Conversion has been defined by this court in *Aylesbury Merc. Co. v. Fitch,* 22 Okla. 475, 99 Pac. 1089, 23 L. R. A. (N. S.) 573, as follows:

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."

In a suit for conversion of personal property, where the taking possession and conversion is wrongful, no demand is necessary before bringing suit, for the wrongful taking and conversion is an assertion of ownership. *Purcell Cot. Oil M. v. Bell,* 7 Ind. T. 717, 104 S. W. 945; *Clinton Nat. Bank v. McKennon,*

26 Okla. 839, 110 Pac. 649; 28 A. & E. Ency. Law (2d Ed.) 686, and note; 38 Cyc. 2032, and note 79; *Id.* 2035, and note 87.

In considering what amounts to conversion, 38 Cyc. 2022, says: "And so is the taking of property by virtue of a void writ." And in the same volume at page 2023 it is said:

"The appropriation to one's use of property purchased at an invalid public sale is a conversion, even if the purchase was made in good faith."

In *Jones v. Buzzard et al.,* 2 Ark. 415, a section of the syllabus reads:

"An unlawful levy upon property, as under a void writ of attachment, is such a tortious taking and conversion as will support trover."

In a recent Texas case (*Crawford et al. v. Thomason et al.,* 53 Tex. Civ. App. 561, 117 S. W. 181) it is said in the syllabus:

"The moving of a building and its contents from a strip of land, under a writ of sequestration void because issued before judgment, is a conversion of the property."

And in the case of *Baldwin v. Whittier,* 16 Me. 33, the court ruled:

"A writ, unlawfully sued out in the name of another by the defendant, and irregularly served by his procurement, can afford him no protection in taking the property of another under color thereof."

In *Ward v. Carson R. W. Co.,* 13 Nev. 44, the syllabus declares:

"The taking of personal property under an invalid sale, with the intent to convert it to one's own use, amounts to a conversion, and the true owner of the property can recover its value in an action of trover, without making any demand, notwithstanding the fact that the purchaser purchased the property in good faith, believing his title to be valid."

See, also, *Harrell v. Harrell,* 75 Ga. 697.

The instructions are complained of, but they were in harmony with the views herein expressed and we think fairly stated both the issues and the law. The further contention of appellant that the petition failed to state a cause of action is not well taken, under the authority of *Capps v. Vasey Bros.,* 23 Okla. 554, 101 Pac. 1043. The claim that plaintiff is estopped is equally

unavailing. This is based on the claim that the illegal sale of the crop was made on the farm where plaintiff resided, and that he did not interfere or object. Under the facts it is not necessary to discuss this question and whether or not an estoppel would lie in any event under the circumstances, for the reason that plaintiff was not present at the sale, although he may have seen the constable and men out in the field on his premises on the day it occurred.

This disposes of all the points necessarily involved, and convinces us that the cause should be affirmed.

By the Court: It is so ordered.