2007 OK 69

**Ali MEHDIPOUR, Plaintiff/Appellant,**

v.

**Kenneth HOLLAND and Star Metals Company, Defendants/Appellees.**

**James S. Matthews, Jr., Petitioner/Appellee,**

v.

**Ali Mehdipour, Star Metals Company, and Kenneth E. Holland, Respondent/Appellant.**

No. 101,545.

Supreme Court of Oklahoma.

Sept. 25, 2007.

Rehearing Denied Dec. 12, 2007.

Donelle H. Ratheal, Donelle H. Ratheal, P.C., Oklahoma City, OK, Attorney for Appellant, Ali Mehdipour.

James S. Matthews, Jr., Oklahoma City, OK, Attorney for Appellee, James S. Matthews, Jr.

EDMONDSON, V.C.J.

¶ 1 We previously granted certiorari in this matter to consider the contentions of Ali Mehdipour that the trial court erred in denying his motions to vacate the attorney's lien of one of his lawyers and to set aside the sheriff's sale to that lawyer of Mr. Mehdipour's judgment against defendants Kenneth Holland and Star Metals Company. We agree with Mr. Mehdipour that the sheriff's sale must be set aside as we find the trial court was without jurisdiction to order execution on the judgment. Accordingly, we vacate the Court of Appeals' opinion, reverse the trial court's orders in part and remand the matter to the trial court with directions.

¶ 2 Mr. Mehdipour complains that his former attorney, James S. Matthews, Jr., stripped away his $67,607.96 judgment

against Holland and Star Metals when the trial court allowed him to "convert" his claimed $17,642.37 attorney's lien to a judgment in favor of himself against Mr. Mehdipour's judgment and then to execute on it in his own behalf. Through his efforts, Mr. Matthews was able to purchase Mr. Mehdipour's judgment for $500.00.

¶ 3 This litigation has an exhausting history in the courts which we need not set forth fully. We mention only the facts necessary to understand the issues.

¶ 4 In November 1993, Mr. Mehdipour sued Kenneth Holland for specific performance of a real estate purchase contract and for damages. After having two trials and two appeals on the primary issues as well as many hearings on incidental issues, and being represented by a series of several attorneys as well as sometimes representing himself, Mr. Mehdipour was ultimately successful in the prosecution of his claims.[1] In April 2001, on remand from this Court, final judgment was entered by the trial court in Mr. Mehdipour's favor against defendants Holland and Star Metals Company, granting him specific performance of the contract for purchase of certain real property and for money damages in the amount of $67,607.96 as damages for fair rental value of the property from the time he should have been given possession. Following the 2001 award and entry of judgment in his favor, Mr. Mehdipour made several attempts to execute on his judgments but the defendants were able to avoid collection through various means, including filing for bankruptcy.

The property at issue was appraised at a value of $65,000.00 for execution.

¶ 5 James S. Matthews, Jr., was the second lawyer to represent Mr. Mehdipour in this action. He entered his appearance in June 1996. In November 1998, after he was no longer attorney of record, Mr. Matthews filed a Notice of Lien for $17,642.37 in unpaid attorney fees. Notice was given to Mr. Mehdipour and counsel for the defendants.

¶ 6 In May 2000, following this Court's remand of the matter to the trial court, Mr. Matthews filed a document styled "Petition and Motion to Subject Judgment and Claim to Attorney Lien" in which he alleged he had a valid and duly perfected charging lien in the amount of $17,642.37 "against [Mehdipour's] recovery, including the subject real property, and the judgment including the attorney fees and costs awarded," and asserted he was therefore "entitled to a Judgment and Order, subjecting the entire judgment claim of Mehdipour to payment of the amount owed him." Matthews prayed for a determination that he had a "lien to secure the payment of such amount, from the recovery" against defendants. R. 348–349.

¶ 7 By order filed August 25, 2000, the trial court granted Mr. Matthews' petition and motion for recognition of his attorney's lien over jurisdictional objections and various defenses to the validity and amount of the lien raised by Mr. Mehdipour. The court's order was captioned "Judgment and Order Granting Petition to Subject Judgment and Claim to Attorney Lien" and provided that a lien "is

---

1. In February 1994, Mr. Mehdipour's motion for summary judgment was sustained, the trial court granted him specific performance and defendant appealed asserting the contract was void by reason of his previously adjudicated incompetence. In January 1996, that judgment was reversed by unpublished opinion of the Court of Appeals, Div. 2, remanding the case for further proceedings with directions to determine alleged abandonment of guardianship pursuant to a legal test set forth. In December 1998, an order was entered by the trial court granting judgment in favor of Mr. Mehdipour on his prayer for specific performance but denying his request for damages for rental value and also awarding attorney fees of $10,000 and costs to Mr. Mehdipour. Seller appealed grant of specific performance and Mr. Mehdipour, appearing pro se, appealed denial of damages for rental value. The matter was as-

signed to the Court of Appeals, Div. 3, which concluded by unpublished opinion that the earlier decision of the Court of Appeals, Div. 2, regarding the legal test of abandonment of guardianship was erroneous, reversing the judgment in favor of Mr. Mehdipour for specific performance. This Court granted certiorari and, based on our determination that the guardianship issue had become final and was the law of the case, in April 2000 we vacated the opinion of Court of Appeals, affirmed the trial court's grant of specific performance and remanded with directions to grant Mr. Mehdipour the fair rental value of the property from the time he should have had possession. *Mehdipour v. Holland*, 2000 OK 22, 18 P.3d 339. The trial court then determined the amount of damages and pronounced judgment for Mr. Mehdipour in 2001.

imposed in and recognized in favor of Mr. Matthews and against the judgment and claim of Mehdipour in this action, for attorney fees and reimbursement of expenses ... due and owing ... in the amount of $17, 642.37, including but not limited to, Mehdipour's Judgment granting specific performance of a real estate purchase contract, as to certain property." R. 465. Mr. Mehdipour did not appeal this order impressing the attorney lien on his judgment.

¶ 8 On June 15, 2004, Mr. Matthews filed execution proceedings in his own name and in his own behalf against Mr. Mehdipour to sell Mr. Mehdipour's judgment against defendants at sheriff's sale. He did not personally serve Mr. Mehdipour with notice of his execution. His documents portray his attorney's lien impressed on Mr. Mehdipour's judgment on August 25, 2000, as a regular "judgment" in Mr. Matthews' favor against Mr. Mehdipour. His notice of lis pendens recites that he "caused execution to be issued on his judgment against Ali Mehdipour" and speaks of his "attorney judgment lien," his "judgment lien" and the "Matthews judgment filed of record in the Office of the County Clerk." R. 520–522.

¶ 9 Mr. Matthews' amended writ of execution and order for sale of personal property commanded the Sheriff to levy upon and sell the judgment of Ali Mehdipour against defendants, described as follows:

> The Judgment or Judgments obtained and in favor of Ali Mehdipour against Kenneth Holland and Star Metals Company, and all rights and security appurtenant thereto, including judgment obtained by Ali Mehdipour for specific performance and for money damages, as evidenced by the orders and judgments entered by the Court in this action (filed of record) on the 26th day of April, 2001(money damages), December 10, 1998 (Attorney fees and costs), Minute Order of July 8, 1998 (Minute Entry for Specific Performance), and February 12, 1999, and September 11, 1998.

¶ 10 The Sheriff was commanded to apply the proceeds to the "judgment of Matthews" with a balance due of $17,642.37, plus accrued and accruing interest in the amount of $5,016.18, the "interest at the judgment rate subsequent to entry of judgment," and, after deducting costs, to pay any surplus to Mr. Mehdipour. R. 525–526.

¶ 11 The Sheriff reported in his return of sale that he had executed on Ali Mehdipour's judgment against defendants "by virtue of the execution issued on the judgment of James S. Matthews, Jr.," and caused the property to be sold at public auction on July 8, 2004, for the sum of $500.00 to "James S. Matthews," the highest bidder. R. 532–533.

¶ 12 Once he learned of Mr. Matthews' sheriff's sale of his judgment, Mr. Mehdipour filed a motion to set it aside contending that Matthews did not have a judgment against him, but had instead, at most, only an attorney's lien on his judgment, and that Matthews had made no attempt to personally serve Mr. Mehdipour with notice of the execution and sale. That motion was denied by the trial court as was Mr. Mehdipour's subsequent motion for reconsideration of that order which is appealed here.

¶ 13 Mr. Mehdipour then sought to execute on defendants' real property based on his judgment, but Mr. Matthews filed a motion to quash Mehdipour's execution and order of sale and a motion to recall the sheriff's sale, wherein he alleged:

> "The Movant Matthews has acquired the Judgment by execution and sale, which provides the only possible basis for collection action by Ali Mehdipour. As a result, Mehdipour has no standing to issue execution or to take other action to collect the judgment against Kenneth Holland and Star Metals in this action." R. 604.

¶ 14 The trial court granted Mr. Matthews' motion to quash Mr. Mehdipour's execution and recalled the sheriff's sale. The court's Order recited:

> "The Court, having heard the evidence and argument presented, and being otherwise fully advised in the premises, finds the Motion should be granted, for the reason that James S. Matthews, Jr. has acquired all judgments against Star Metals Company and Kenneth Holland, and only he can pursue collection or enforcement

action of any kind with respect to any such judgment." R. 657.

¶ 15 Additionally, the Order cautioned the Sheriff's office that because Mr. Mehdipour's sale had been recalled, "no sale may take place based on any collection action of or in behalf of Ali Mehdipour for judgments originally obtained by him in this action...." R. 658.

¶ 16 Mr. Mehdipour subsequently filed a motion to vacate the August 25, 2000, order imposing Mr. Matthews' attorney lien on his judgment, which was denied; then he filed a motion to reconsider that order, which was also denied, and Mr. Mehdipour appealed.

¶ 17 After commencing appeal, Mr. Matthews initiated an execution proceeding against Mr. Mehdipour's judgment to sell the real property of defendants which has been appraised at $65,000.00. Based on the outcome in his first sheriff's sale, Mr. Matthews' Alias Writ of Execution asserted his exclusive ownership of Mr. Mehdipour's entire $67,607.96 judgment, together with "interest accruing at the judgment rate," contending that he (Matthews) had "subsequently succeeded to the [Mehdipour April 26, 2001] Order and Judgment and all rights thereunder or relating thereto." He alleged the total amount of the judgment, plus costs and interest, were due him since nothing had been paid on the balance.

¶ 18 Mr. Mehdipour sought a stay of the sale from the trial court but his efforts were unsuccessful and the sale took place on July 28, 2005. The trial court also denied his alternative request that the proceeds of the sale be ordered held in escrow until the conclusion of this appeal. In order to protect his rights to the defendants' property secured by his judgment, Mr. Mehdipour was forced to purchase defendants' real property at the sale. He was the high bidder with a bid of $60,000.00, and Mr. Matthews was the second highest bidder with a bid of $59,000.00. The trial court ordered the funds disbursed to Mr. Matthews, but Mr. Mehdipour sought, and received, an Order from this Court staying distribution of the $60,000 proceeds of the sale held by the district court clerk during the pendency of this appeal.

¶ 19 It is fair to say that the record in this matter is extravagantly adorned and the issues are consequently somewhat muddled. These things, however, are clear to us: (1) Mr. Mehdipour had a judgment against defendants in the amount of $67,607.96; (2) Mr. Matthews does not have a judgment against Mr. Mehdipour and he is not a judgment creditor; (3) Mr. Matthews' interest in Mr. Mehdipour's judgment is an attorney's lien securing payment of his claim in the amount of $17,642.37; (4) The order of the trial court impressing Mr. Matthews' lien on the Mehdipour judgment is final and any issues concerning the lien's validity, perfection or proper amount are now moot; (5) Because Mr. Mehdipour's attempts to recover on the judgment had been unsuccessful, there were no proceeds to disburse to Mr. Matthews on his lien; (6) The trial court did not have the power to grant Mr. Matthews' requested execution on the Mehdipour judgment as he was not a party to the litigation and there was no valid underlying judgment in his favor to support it.

¶ 20 Oklahoma law recognizes two types of liens by which an attorney may secure payment for his or her services: (1) a special or charging lien and (2) a common-law possessory or retaining lien. The retaining lien is a passive lien; it *is dependent on possession and* it is not actively enforced by foreclosure. It simply allows a lawyer to retain possession of a client's papers, money or property under certain conditions until the client pays the bill. *See State ex rel. Oklahoma Bar Association v. Cummings,* 1993 OK 127, 863 P.2d 1164, 1168–1170; *Burns v. Pratt,* 1934 OK 191, 31 P.2d 106, 107.

¶ 21 The lien Mr. Matthews claimed is a special or charging lien, also sometimes called a "statutory" or "equitable" lien, which was recognized at common law and is now codified at 5 O.S.2001, § 6, which reads as follows:

From the commencement of an action, or from the filing of an answer containing a counterclaim, the attorney who represents the party in whose behalf such pleading is filed shall, to the extent hereinafter specified, have a lien upon his client's cause of

action or counterclaim, and same shall attach to any verdict, report, decision, finding or judgment in his client's favor; and the proceeds thereof, wherever found, shall be subject to such lien, and no settlement between the parties without the approval of the attorney shall affect or destroy such lien, provided such attorney serves notice upon the defendant or defendants, or proposed defendant or defendants, in which he shall set forth the nature of the lien he claims and the extent thereof; and said lien shall take effect from and after the service of such notice, but such notice shall not be necessary providing such attorney has filed such pleading in a court of record, and endorsed thereon his name, together with the words "Lien claimed."

■ ¶ 22 Pursuant to the statute, an attorney may have a valid lien on a client's cause of action which will attach to the client's judgment or recovery when he or she has commenced an affirmative action for the client and endorsed the words "lien claimed" on the petition or counterclaim, or has given written notice to the adverse party or has entered a lien claim in the judgment docket opposite the entry of the judgment before rights of third persons intervene. *See Cummings,* 863 P.2d 1164, 1169; *Widick v. Phillips Petroleum Co.,* 1937 OK 463, 70 P.2d 474, 477; *Cherry v. Erwin & Erwin,* 1935 OK 789, 49 P.2d 788, 789.

■ ¶ 23 The purpose of the charging lien is to have the fees and costs due an attorney for services rendered in a suit secured by the judgment and recovery in that suit. The charging lien is founded on the equitable right of the lawyer to be paid fees and disbursements out of the judgment or recovery he or she has obtained for the client. In that way, when the skills and services of an attorney produce a judgment, the attorney may, by taking the appropriate procedural steps, see that a lien "attaches to the fruits of his efforts." *Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.,* 1982 OK 72, 650 P.2d 857, 862; *Campanello v. Mason,* 1977 OK 209, 571 P.2d 449, 451; *Wilkerson v. Walker,* 1946 OK 107, 167 P.2d 372, 374.

¶ 24 The following history of the charging lien set forth in *In re Heinsheimer,* 214 N.Y. 361, 108 N.E. 636, 637 (1915), is informative and relevant here:

At common law ... there was also a charging lien, which bound a judgment recovered through the attorney's efforts. This lien was not dependent on possession. The very reason for its existence was to save the attorney's rights where he had been unable to get possession. 'It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.' (Citation omitted). A clandestine or collusive payment, after notice, actual or constructive, of the lien, did not discharge the debtor. (Citation omitted).

But the reason for the existence of this lien suggests the limitation of its scope. It was not a lien for a general balance of account. It was a lien for the value of the services rendered in that very action. (Citations omitted). If the attorney got possession of the fund, he had a general lien. If he did not get possession, his lien was for the services that brought the fund into existence. This charging lien still exists under our statutes. It has been enlarged to the extent that it now attaches to a cause of action even before judgment. 'From the commencement of an action or special proceeding' the attorney now has a lien 'upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. (Citations omitted). Except as thus changed, the charging lien is today what it was at common law." At 637.

■ ¶ 25 Our decisions hold that the remedy for enforcing a charging lien is a matter of equitable cognizance which may be brought in a proceeding ancillary to the main litigation or an independent action. *City of Barnsdall v. Curnutt,* 1945 OK 327, 174 P.2d 596, 598–599; *Edwards v. Andrews, Davis,*

*Legg, Bixler, Milsten & Murrah, Inc.*, 1982 OK 72, 650 P.2d 857, 863.

¶ 26 In a proper case the court, in the exercise of its equitable powers, will protect the attorney's equitable right to proceeds in the amount of the lien by preventing payment by a judgment debtor to creditor in fraud of the attorney and by preventing or setting aside settlement made in fraud of the attorney. *Chicago, Rock Island & Pacific Railroad Co. v. Rittenhouse, Hanson & Evans*, 1955 OK 133, 285 P.2d 186 (where defendant had actual knowledge of lien of plaintiff's' attorneys before judgment, no further notice of lien was required to protect attorneys' interest from parties' attempted collusive settlement as after judgment); *Cherry v. Erwin & Erwin*, 1935 OK 789, 49 P.2d 788 (weighing equities, especially as to third party's oppressive behavior, rights of lawyers in judgment found superior to that party's right to set off his mutual judgment).

¶ 27 On appeal Mr. Mehdipour raises arguments challenging the amount, validity and proper perfection of Mr. Matthews' attorney's lien, matters which were determined by the trial court's order of August 25, 2000, imposing the attorney's lien. He did not appeal that order at the time, however, and we find that his motion to vacate filed four years later was untimely and those issues are now moot. The vacatur proceeding was not brought by petition as required by 12 O.S. 2001, § 1033; and none of the requisite grounds to vacate set forth in 12 O.S.2001, § 1031, were raised. We therefore affirm the Court of Appeals decision which affirmed denial of Mr. Mehdipour's motion to vacate the trial court's August 25, 2000, order imposing the attorney's lien.

¶ 28 Pursuant to the above authorities, it is plain that if Mr. Mehdipour had been successful in his efforts to execute on his judgment against defendants and had obtained proceeds therefrom, Mr. Matthews could properly have enforced his $17,642.37 lien on the judgment against that recovery. Here, however, there was no fund against which Mr. Matthews could enforce his lien and the instant matter presents an impermissible attempt to enforce that attorney's lien. Mr. Matthews' efforts were to pursue executions on Mr. Mehdipour's judgment as if he were the judgment creditor and Mr. Mehdipour were the judgment debtor.

¶ 29 The sheriff's sale which took place under execution procured by Mr. Matthews must be set aside, because Mr. Matthews was not a party to that action and the judgment belonged only to Mr. Mehdipour. Title 42 O.S. §§ 1 and 10 provide that a lien "is a charge imposed on specific property, by which it is made security for the performance of an act," but that a lien "transfers no title to the property" subject to it.

¶ 30 Execution is the process of the court by which it provides for the enforcement of a final judgment it has rendered in an action after it has determined the issues and adjudged a recovery. *Jarecki Mfg. Co. v. Fleming*, 1934 OK 675, 38 P.2d 925, 927–928; See 12 O.S.2001, §§ 681–709; 731–803. It is axiomatic that a valid judgment is the requisite foundation for a valid execution. *Johnson v. Bearden Plumbing & Heating Co.*, 1937 OK 495, 71 P.2d 715; *Williams v. Ross*, 1924 OK 125, 223 P. 137. Where execution is issued on a void judgment, the execution is likewise void. *Bilby v. Jones*, 1913 OK 620, 136 P. 414, 416; *Harris v. Smiley*, 1912 OK 725, 128 P. 276, 278; *Lowry v. Semke*, 1977 OK 220, 571 P.2d 858, 860. Here there is no underlying judgment to support the execution which was procured solely by Mr. Matthews and not authorized by Mr. Mehdipour.[2]

¶ 31 The trial court had no power to issue execution on Mr. Mehdipour's judgment on application of Mr. Matthews. Equity follows the law. Where, as here, the

---

**2.** We find no Oklahoma decisions directly on point, *but see Bovard v. Bovard*, 233 Mo.App. 1019, 128 S.W.2d 274 (1939); *Howard v. Howard*, 300 S.W.2d 853 (Mo.App.1957), and *Anderson v. Anderson*, 404 S.W.2d 206 (Mo.App. 1966), for cases with similar facts. *See Blanchard v. Blanchard*, 25 N.C. 105, 1842 WL 1033, 38 Am. Dec. 710 (1842) and *Underwood v. Harvey*, 32 S.E. 124, 106 Ga. 268 (1898) for cases involving executions issued in favor of persons other than those named in judgments as plaintiffs; discussed in depth in *Smith v. Bell*, 33 S.E. 684, 107 Ga. 800 (1899).

rights of parties are clearly defined and established by law, equity has no power to change or unsettle those rights. The maxims of equity may be invoked to protect an existing right, but they are unavailable to create a right where none exists. *Phelan v. Roberts*, 1938 OK 139, 77 P.2d 9.

¶ 32 The order of the trial court denying Mr. Mehdipour's motion to vacate the order impressing his judgment with an attorney's lien in the amount of $17, 642.37 in favor of Mr. Matthews is affirmed. The order of the trial court denying Mr. Mehdipour's motion to set aside the sheriff's sale is reversed and the matter is remanded to the trial court with directions to enter judgment in favor of Mr. Mehdipour in a manner consistent with this opinion. The proceeds in the sum of $60,000.00 currently on deposit with the Oklahoma County Court Clerk that were stayed subject to Order of this Court are ordered to be distributed to Mr. Mehdipour.

¶ 33 CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF TRIAL COURT AFFIRMED IN PART; REVERSED IN PART; CAUSE REMANDED TO TRIAL COURT WITH DIRECTIONS.

¶ 34 EDMONDSON, V.C.J., HARGRAVE, WATT, TAYLOR, COLBERT, JJ., concur.

¶ 35 WINCHESTER, C.J., and OPALA, and KAUGER, JJ., concur in part, dissent in part.

OPALA, J., with whom WINCHESTER, C.J., joins, dissenting in part.

¶ 1 While I concur in the court's analysis, **I disagree with its disposition of the case.** I would modify the court's mandate by affording the lawyer, James S. Matthews, Jr., Esq., an opportunity to amend his pleadings in post-remand proceedings to re-press a lien foreclosure claim against the client's (Mr. Mehdipour's) judgment proceeds now in *custodia legis*. If Mr. Matthews can show that his attorney's lien can properly be attached to these proceeds, he should be entitled to have its amount impressed as his attorney's lien upon Mr. Mehdipour's money, now in *custodia legis,* and secure its payment from the court clerk in obedience to an order of the district court.