2010 OK CIV APP 67

**Keith MARGERISON and Robert McCullough, Plaintiffs/Appellants,**

v.

**CHARTER OAK HOMEOWNERS ASSOCIATION, Defendant/Appellee.**

**No. 107,843.**

Court of Civil Appeals of Oklahoma, Division No. 1.

May 21, 2010.

Mary R. Bundren, Bundren Law Firm, Tulsa, Oklahoma, and Jonathan C. Neff, Tulsa, Oklahoma, for Plaintiffs/Appellants.

Grant R. Cheadle, Cheadle & Associates, Inc., Tulsa, Oklahoma, for Defendant/Appellee.

KENNETH L. BUETTNER, Presiding Judge.

¶1 Plaintiffs/Appellants Keith Margerison and Robert McCullough appeal summary judgment entered in favor of Defendant/Appellee Charter Oak Homeowners Association. Appellants and Association both sought summary judgment declaring whether Appellants' gates could remain in a fence Association installed along its fencing easement on Appellants' properties. The record on appeal shows disputed material facts on the issues of waiver and estoppel. We therefore reverse and remand for further proceedings.

¶2 Appellants' lots in the Charter Oak Addition in Tulsa were burdened with an easement reserved by the Association. When Appellants purchased their properties, the easement contained a fence enclosing the perimeter of the addition, and the fence included gates on Appellants' lots which afforded access to a public park behind the addition. Appellants asserted that when the Association announced plans to replace the perimeter fencing, Margerison sought to replace the existing gate on his lot at his own expense. The Association approved his request in May 2008, and Margerison replaced the gate in September 2008. However, in January 2009 the Association demanded that Margerison remove the new gate. The Association later met and voted to remove all gates in the Association's fence. Appellants sought a judgment declaring they had a property interest in their gates and the Association did not have authority to demand removal of the gates; Appellants also sought an injunction against removal of the gates.

¶3 In its Answer, the Association responded that it possessed an exclusive easement granted in the original plat and deed of dedication. The Association also asserted that its Board's action of granting permission to Margerison to replace the gate on his lot was made without authority. The Association asserted it was revoking any license granted by giving Margerison permission to install a replacement gate. The Association argued that the gates constituted violations of its rules and by laws.

¶4 In seeking summary judgment, the Association listed 37 statements of undisputed facts. Appellants responded, disputing about half of the Association's asserted facts.[1] Ap-

---

1. Appellants disputed the following statements of fact (we have omitted repetitive statements of fact in the Association's motion):

5) the PUDs and Deeds of Dedication conveyed a 3 foot exclusive easement for fencing and landscaping to the Association (Appellants disputed the easement was exclusive);
8) there is no proof Margerison's predecessor in title had authority to install a private gate on his lot;
9) there has never been a vote of Association members consenting to privatizing any gates or access through the common areas or common elements;
14) there is no proof that McCullough's predecessor in title had authority to install a private gate;
17) neither the By-Laws nor restrictive covenants grant the Board authority to approve installation of gates in the northern perimeter fence;

19) the Association has an exclusive easement of three feet for landscaping and fencing along the northern perimeter of the addition;
20) Margerison did not have votes of the majority then present approving of his request to install a replacement gate;
23) none of the gates installed in the northern perimeter fence fall within the scope of the one listed exception to Association's easement, and therefore the gates are in conflict with the intent to limit access and with the terms of the easement;
24) neither the Board nor Appellants have authority to alter the terms of the easement granted to the Association or the authority to grant private access to the addition through common elements;
28) in May 2008, Margerison petitioned the Board to allow him to install a new gate in the perimeter fence (Appellants asserted the gate was a replacement gate, rather than a new gate);
30) the Board lacked authority to alter the easement, and the vote to allow Margerison to re-

pellants also sought summary judgment in their favor, and they listed 22 statements of undisputed facts.[2] The deed of dedication provides:

9. Grantor hereby grants to [Association] an easement, of the varying width shown on the accompanying plat, on all perimeter lots ... for the several purposes of constructing, maintaining, altering, repairing, removing and replacing retaining and screening walls, fences, and landscape materials on the exterior side thereof, with the right of ingress and egress in and to said easements for the uses and purposes aforesaid.

The Third Amendment of Declaration of Covenants, Conditions and Restrictions, dated July 2, 1990, provides:

Section 4. Fencing.

(a) Perimeter Fencing or Walls. Within the Deed of Dedication of Charter Oak there has been heretofore established for the benefit of the Association a perpetual easement upon the perimeter of Charter Oak for the purposes of the erection, installation, and maintenance of security and entry facilities, decorative fencing, walls, and landscaping. The maintenance of the perimeter ... fencing ... shall be the obligation of the Association. The perimeter easement of the Association shall be deemed exclusive, and no individual lot owners shall construct any fence or wall within the perimeter easement area or within 10 feet of the perimeter boundary line of Charter Oak, unless the proposed fence or wall shall have first been approved in writing by the Association.

¶ 5 The trial court entered summary judgment in favor of Association January 6, 2010. The trial court found that the developer of the addition assigned an exclusive easement to the Association for the purposes of creating a limited access gated community. The court cited authority that easements may not be enlarged by implication. The trial court further held that there was no issue of fact as to waiver or acquiescence because the fifteen year adverse possession period had not run. The court lastly held that "any claim to create private rights in the common element of the fence is not permitted by any of the foundation [Association] documents." The court lifted the injunction against the Association's planned removal of the gates.

¶ 6 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not

---

place the gate was not made by a majority of the Directors present and did not grant Margerison the right to install a gate;
33) in October 2008, portions of the perimeter fence were replaced, including the part with the gate at issue, and sometime later that month Margerison had a new gate installed in the new fence;
34) the Association owns the perimeter fencing and all gates in the fence; and
35) Margerison agrees that the Board may remove gates from the perimeter fence at any time.

2. The Association disputed Appellants' assertions of fact as follows:

3) the gate on Margerison's property was installed in 1997 by his predecessor in title, John Easley, with the Association's permission;
7) the Association has for years acquiesced in the existence of the gates on Appellants' properties;
8) a major factor in Appellants' decisions to buy their properties was gate access to the park, which constitutes a significant part of their use and enjoyment of their properties;
9) gate access to the park enhances the value of Appellants' properties;
12) the Association granted Margerison's request to replace the gate on his property May 19, 2008;
13) in October, 2008, in reliance on the Association's grant of permission, Margerison installed a replacement gate in the fence, with security enhancements, at his own expense;
17) after the Association announced it voted to remove all gates in its fence, Appellants requested that the gates remain until a court resolved the dispute;
18) by a June 17, 2009 email, the Association denied Appellants' request not to remove the gates pending suit;
19) after the Association denied the request to stay removal, Appellants obtained a temporary injunction to prevent removal of the gates;
21) at a June 26, 2009 hearing, a representative from the Association stated that security in the addition is not an issue in this case; and
22) also at that hearing, the Association's president admitted that there is no emergency with respect to the gates.

proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶7 The summary judgment record shows a dispute of fact on whether the Association is estopped from demanding removal of the gates after acquiescing in their existence in the fence for a number of years and after expressly granting Margerison permission to replace the gate on his lot. Exhibit 4 attached to Appellants' summary judgment motion was the affidavit of Margerison's predecessor in title, John Easley, who averred that he installed the gate in the fence in 1997 with permission of the Association and that the Association did not object to the gate between 1997 and August 2003, when Easley sold the property to Margerison. Appel-

lants' Exhibit 6 was the affidavit of Tom King, who stated that he replaced the perimeter fence on Lot 10 in the addition in 2003. At the same time, he installed a gate in the fence on that lot, which McCullough later purchased. King also asserted that after he installed the fence and gate, the Association's treasurer informed him the Association would reimburse him for the cost of replacing the fence. King asserted that no one from the Association raised an objection to the gate.

¶8 The trial court erred in basing its decision on the 15 year limitations period for boundary by acquiescence. The issue is whether the Association acquiesced in the gates being part of the fence within the unchallenged-easement. Appellants have not claimed that the easement was lost by the existence of the gates for the prescriptive period, nor have Appellants claimed the easement itself was extinguished by estoppel.[3]

---

3. Section 505 of the Restatement (First) of Property (Servitudes) (1944) provides:

An easement is extinguished when action is taken by the owner of the servient tenement inconsistent with the continued existence of the easement, if

(a) such action is taken in reasonable reliance upon conduct of the owner of the easement; and

(b) the owner of the easement might reasonably have foreseen such reliance and the consequent action; and

(c) the restoration of the privilege of use authorized by the easement would cause unreasonable harm to the owner of the servient tenement.

Comment:

a. Rationale. The owner of an easement is not permitted to change a position once taken by him if the change would work undue prejudice to the owner of the servient tenement. It is not essential that the owner of the easement shall have made, intentionally or otherwise, any misstatement of fact. It is necessary only that he shall have led, under circumstances such that he may properly be held responsible for having done so, the owner of the servient tenement into some action inconsistent with the continued existence of the easement, such action being taken under the reasonable belief that it was not inconsistent with any claim of a privilege to use which would thereafter be made under the easement. It is apparent that there is here found a liberal application of the principles of estoppel. In many cases in other situations an estoppel arises only through reliance upon a misrepresentation of a present or past factual situation. The person estopped must have caused, in such a way that he is responsible for having done so, the person claiming the benefit of an estoppel to believe

something to be true which is not true. In cases covered by this Section, however, an estoppel may arise upon a representation as to the future alone. Thus, if the owner of an easement acts as though he has no intention to make in the future the use authorized by the easement, he may become estopped to make such a use if the owner of the servient tenement acts in reliance upon the intention indicated.

The liberality of the doctrines of estoppel in this connection indicates the influence of notions of social policy having especial significance here. That social policy originates in the feeling that unused easements constitute objectionable encumbrances upon the title to the land subject to them and obstructions to its development. Out of this feeling there arises an attitude favorable to their extinguishment. The result is that the law has developed rules favorable to the accomplishment of that end. If such rules develop from the application of doctrines which are also applicable to other fields, they may well be more liberal than rules developed in the application of those doctrines in at least some of such fields. * * *

g. Extent of extinguishment. The extinguishment of an easement by estoppel may be complete or partial. The conduct of the owner of the easement may be such as to estop him either from claiming a part only of the privileges enjoyed or from claiming any of them. The action taken in reliance upon the conduct of the owner of the easement may similarly be so extensive or so limited as to warrant either an estoppel against any claim to a future use under the easement, or an estoppel against only some of the claims which may be made to a continuance of the uses formerly privileged. Again, the harm

Instead, the evidence shows the parties dispute the material fact of whether the Association is estopped from removing the gates by its acquiescence in their installation and presence in the fence. The Restatement (Third) of Property (Servitudes) (2000) provides for a change to an easement based on estoppel. Section 7.6, Modification Or Extinguishment By Estoppel, provides:

> A servitude is modified or terminated when the person holding the benefit of the servitude communicates to the party burdened by the servitude, by conduct, words, or silence, an intention to modify or terminate the servitude, under circumstances in which it is reasonable to foresee that the burdened party will substantially change position on the basis of that communication, and the burdened party does substantially and detrimentally change position in reasonable reliance on that communication.

The Oklahoma Supreme Court has recognized that "(a)cquiescence involves a quiet submission or compliance with acts from which assent can reasonably be inferred. A person may, through long acquiescence in a practice or recognition of a right, be precluded from denying the legality of the actions taken." *Smith v. Baptist Foundation of Oklahoma,* 2002 OK 57, ¶ 10, 50 P.3d 1132 (footnotes omitted).

¶ 9 The evidentiary materials show a dispute as to whether the Association acquiesced in the existence of the gates. Even in the absence of such acquiescence, the evidence also shows a dispute of fact whether the Association acted within its authority to grant permission to Margerison to install the replacement gate in 2008.[4]

¶ 10 Finally, the evidence shows a dispute of material fact as to whether the presence of the gates constituted an unreasonable burden on the Association's use of the easement. A servient tenant may make reasonable use of his property burdened by

an easement, so long as such use is not inconsistent with the dominant tenant's rights under the easement. We again recognize the Restatement (Third) of Property (Servitudes) (2000), in which § 4.9, Servient Owner's Right To Use Estate Burdened By A Servitude, provides: "(e)xcept as limited by the terms of the servitude determined under § 4.1, *the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude.*" (Emphasis added). Comment c to that section explains that the servient tenant "is entitled to make all uses of the land that are not prohibited by the servitude and that do not interfere unreasonably with the uses authorized by the easement." Additionally, "(b)arring an agreement to the contrary, the owner of the servient estate may use his or her property in any manner and for any purpose consistent with the enjoyment of the easement." 28A CJS Easements § 222. Whether the use planned by the servient tenant (Appellants) is unreasonable or inconsistent with the rights of the Association in the easement is a question of fact. *U.S. v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). Factors to be considered in deciding the question include the intent of the original parties, the language in the deed of dedication, and the construction or practice of the parties. *Id.*

¶ 11 The record shows disputed material facts and we therefore REVERSE AND REMAND for further proceedings.

HETHERINGTON, J., concurs, and HANSEN, J., dissents with opinion.

Dissenting Opinion by CAROL M. HANSEN, Judge.

¶ 1 The majority mischaracterizes the issue as one dealing with whether a gate "could remain" in the fence. The original fence and gate are gone.

---

resulting to the owner of the servient tenement from the restoration of the privileges authorized by the easement may be such as to warrant the refusal to restore any of them or it may be only sufficient to make it reasonable to refuse to restore part but not all of them.

4. The record on appeal includes the minutes of the Association's May 2008 Board meeting. Four of the five Board members were present, including Margerison, who abstained from the voting. Of the three members present who voted, two voted in favor of Margerison's request and one voted against.

¶ 2 Charter Oaks Home Owners Association, is a gated community consisting of 65 lots. The 1983 charter and by-laws reserved a three foot perimeter and fence easement in favor of Association along the northern edge of the community. The fence had three gates at the time Plaintiffs purchased their lots. It is undisputed there is no provision in the charter, covenants or by-laws allowing lot owners to install a gate in the perimeter fence

¶ 3 In 2008, because the fence was deteriorating, Association advised Plaintiffs of its intention to replace the fence. Margerison, a member of Association's Board of Directors, at its meeting, received a minority vote purporting to allow him to install a gate in the fence at his own expense, which he did. However, Margerison did not have a majority vote by the Board members present approving his petition to install a gate.[1] Later in 2009, Association, by a vote of the owners, demanded he remove the fence.

¶ 4 The original grant to COHA Charter provides:

> Grantor (Charter Oaks Homes) hereby grants to Charter Oaks Homeowners Association an easement, of the varying width shown on the accompanying plat, on all perimeter lots and lot 'B' as shown and designated on the plat for the several purposes of construction, maintaining, altering, repairing, removing and replacing retaining and screening walls, fences, and landscape materials on the exterior side thereof, with the right of ingress and egress in and to said easements for the uses and purposes aforesaid.

¶ 5 The plats also reflect an easement for maintenance and fencing. And again in 1990, a third amendment of declaration of covenants, conditions and restrictions further contained a section on perimeter fencing or walls. It is even more indicative of an exclusive easement. It provides:

> Within the Deed of Dedication of Charter Oak there has been heretofore established for the benefit of the Association a perpetual easement upon the perimeter of Charter Oak for the purposes of the erection, installation, and maintenance of security and entry facilities, decorative fencing, walls and landscaping shall be the obligation of the Association. The perimeter easement of the Association shall be deemed exclusive, and no individual lot owners shall construct any fence or wall within the perimeter easement area or within 10 feet of the perimeter boundary line of Charter Oak, unless the proposed fence or wall shall have first been approved in writing by the association.

¶ 6 Clearly, Association has a right in the easement to build a perimeter fence consistent with the purpose of the easement. Plaintiffs admit Association owns the fence. Placing a gate in the fence is inconsistent with the easement and in conflict with the intended limited access and exclusive rights of Association.

¶ 7 Plaintiffs point to no provision in any of the charter documents that permit a vote by the board to prevail without a vote of the homeowners.

¶ 8 Plaintiffs are claiming an ownership right superior to the easement rights of Association. Although Plaintiffs in their motion for summary judgment cite several distinguishable decisions from other jurisdictions to support their claims, they do not cite any Oklahoma decision directly applicable to their claims. As pointed out in Association's response to Plaintiffs' motion for summary judgment, under the original founding and governing documents the original grantor installed a fence, created an easement and assigned the same to Association. Plaintiffs may not circumvent these rights. The fact Plaintiffs bought their property partly based on access to the park and the fact it was inconvenient for them to walk or ride to the community exit for that access is not material to this decision.

¶ 9 Equity follows the law. Where the rights of the parties are clearly defined and established by law, equity has no power to change or unsettle those rights. The maxims of equity may be invoked to protect an existing right, but they are unavailable to create a

---

1. Margerison abstained from voting on this issue.

right where none exists. *Mehdipour v. Holland,* 2007 OK 69, 177 P.3d 544. The majority appears to create a right through equity where none exists in the law.

¶ 10 There are no material facts in controversy. Association owns the fence. Accordingly the trial court did not err in granting Association's motion for summary judgment.