## CLAYTON v. SPEAKMAN.

No. 27137.   Feb. 15, 1938.

Charles A. Chandler, for plaintiff in error.

Streeter Speakman, for defendant in error.

BAYLESS, V. C. J. On May 11, 1935, the defendant in error, Streeter Speakman, as plaintiff, instituted suit in the district court of Creek county. Okla., against Charlie Clayton, plaintiff in error. with a view to having a decree establishing and restoring a certain allegedly lost instrument. He alleged: That on April 14, 1928, he had a claim of indebtedness against Charlie Clayton for and on account of legal services performed, in amount $5,600; that after negotiations had, it was agreed by and between them that plaintiff would reduce his claim and accept as full settlement thereof the sum of $4,100. "and in consideration therefor the plaintiff and defendant mutually agreed to release and discharge each other from any and all indebtedness or claim for indebtedness which each might have against the other growing out of any contract or transaction of any nature whatsoever." That on April 14, 1928, said agreement was reduced to writing and on that date executed in duplicate by the parties, and the defendant. Clayton, paid to the plaintiff, Speakman. the sum of $4,100. It was further alleged that plaintiff's copy of said agreement had become lost or destroyed and that he was unable to recover or restore same: that the defendant had refused to furnish plaintiff with a copy of the duplicate which defendant had retained, and was denying the existence and execution of said agreement.

In his answer the defendant, Clayton, admitted payment of $4,100 to Speakman, but alleged that at the time of payment one Odell and Speakman had exclusive dominion and control over all property belonging to defendant, and by false representations, coercion, and duress of withholding said property compelled and forced him to agree to pay Speakman said sum of money. He denied execution of the agreement referred to in the plaintiff's petition, but in the alternative alleged that if said instrument was executed, it was so done by reason of the fraud, coercion, and duress referred to above. In a cross-petition he alleged, in substance, that prior to April 14, 1928, and aided and abetted knowingly by one Odell and one Lowerance, the said Speakman, by fraud, duress, and coercion. obtained money and property of the defendant, including the aforementioned sum of $4,100. He prayed for cancellation of the instrument of release, and for an accounting of all money or property which had been paid or delivered to Speakman, and for restoration of the sum of $4,100 aforementioned.

The plaintiff, Speakman, replied, making general denial, and further alleging that all claims and rights to recovery asserted by the defendant were barred by statutes of limitation.

The trial judge, after hearing the evidence, adjudged (1) that the agreement, containing terms as alleged by the plaintiff, had been executed by said plaintiff and defendant; (2) that said agreement was entered into for a valuable consideration and was duly signed and executed by the defendant, Clayton, under advice of a competent attorney who was representing Clayton at the time; (3) that said agreement was in all respects binding upon the parties thereto and constituted a full and complete settlement of every claim of every character or nature whatsoever which either party had, held, or claimed against the other at the time; (4) that issues of fact were found against the defendant upon his cross-petition and all claims set forth therein were barred by statutes of limitation; (5) that the defendant recover nothing upon his cross-petition and that same stand as dismissed.

This appeal challenges the correctness of said judgment.

It appears from the record before us that over a period of time beginning on or

about July 13, 1924, and ending on March 6, 1927, the defendant in error, Streeter Speakman, an attorney, appeared for and represented the plaintiff in error, Charlie Clayton, in various actions wherein Clayton was either a party plaintiff or defendant; and that, as a result of some of the litigation, Clayton acquired an undivided one-half interest in and to valuable oil lands, together with other real property, notes, bonds, and cash of a considerable amount. Prior to April 14, 1928, Speakman, it appears, was claiming as against Clayton for $5,600, which amount he contended to be a balance due him on his fees for the services he had rendered Clayton in the course of the aforementioned litigation. Clayton, it appears, disputing the claim and refusing to pay same, procured Mr. Glenn Alcorn, a member of the law firm of Disney, Wheeler & Alcorn, to investigate said claim and to represent him in the negotiations and settlement thereof which followed. It further appears that Clayton, in the presence of his attorney, Mr. Alcorn, and acting upon said attorney's advice and direction, on April 14, 1928, tendered to Speakman his check of that date in the amount of $4,100, bearing thereon the notation, "full payment of atty's fee to date," which check Speakman then and there accepted and subsequently cashed.

Proof offered on the part of the plaintiff, Speakman, and received by the trial court, tended to well establish that at the time Clayton delivered the aforementioned check to Speakman, and as a part of that transaction, an agreement in writing evidencing the terms of their settlement was executed in duplicate by Speakman and Clayton, and which agreement in terms provided, among other things, that Speakman and Clayton mutually agreed to release and discharge each other from any and all indebtedness or claims of any and all nature whatsoever. No proof was made or offered on behalf of the defendant, Clayton, to controvert these facts, except that Clayton testified that, according to his "best recollection," he signed "no such agreement." Proof on the part of the plaintiff also tended to well establish the other allegations contained in his petition. From testimony of Clayton it is clear that the relation of attorney and client which had existed between Speakman and Clayton was severed and had ceased many months prior to April 14, 1928. And moreover, Clayton testified, that in the matter of the settlement which was had on the date last mentioned between Speakman and him, Mr. Alcorn was present and represented him, and that he relied upon and followed the advice and directions therein which Mr. Alcorn gave him, to the exclusion of all others.

Hence it would appear that before the date of the settlement Clayton and Speakman had assumed a hostile attitude toward each other, and in the transaction between them on April 14, 1928, were dealing with each other at arm's length; and that in said transaction Clayton had placed himself under the guidance of a skilled and reputable attorney, whose duty in the premises required him to exert himself to the utmost of his skill and ability for the protection of his client's interest. And therefore, in this situation, and in the light of the record before us, we are of the opinion that Clayton executed the instrument referred to in the plaintiff's petition, and that said instrument contained the terms alleged in said petition. And we are of the further opinion that the record reflects a failure of proof on the part of Clayton to establish that his signature to said instrument was obtained through fraud, duress, or coercion, as he had alleged.

From the evidence introduced in relation to the allegations of Clayton's cross-petition, it appears: That in April, 1924, the county court of Creek county, upon application of Sadie Clayton, wife of Charlie Clayton, adjudged Charlie Clayton to be an incompetent person and appointed W. H. Odell as his guardian. Odell, it appears, continued to act as such guardian until December 30, 1926, when by order of that date, made by the aforementioned county court, Charlie Clayton was restored to competency and the guardianship terminated. That thereafter, on the date last mentioned, after Odell's final account as said guardian had been by the aforementioned court allowed and approved, Charlie Clayton executed a deed of trust by which he conveyed all of his property to Odell, to be held and managed by said trustee.

It further appears that during the time Charlie Clayton was under guardianship, Odell, as his guardian, and under written order and direction of the county court of Creek county so to do, paid to Streeter Speakman certain amounts on fees which had been earned by Speakman in performing legal services for and on behalf of Charlie Clayton; but that at the termination of the guardianship Speakman had not been paid the full amounts which the county court had so allowed. That after the termination of the guardianship Clayton became in-

volved, as a party defendant, in certain civil litigation, in which Speakman appeared for and represented him as his attorney. And it appears that the aforementioned unpaid balance. together with amounts claimed by Speakman as his fees for appearing for and representing Clayton in this last-mentioned litigation, made up the item of $5,600 which Speakman was claiming for as against Clayton on and prior to April 14, 1928.

Clayton became desirous of having the trusteeship over his property terminated, and his property restored to him and an accounting and settlement by Odell, the trustee; and to that end procured Mr. Glenn Alcorn, the attorney heretofore mentioned, to assist him therein. Settlement with Odell, it appears, was had on April 14, 1928, at the same time settlement of Speakman's claim was made. And Clayton executed and delivered to Odell a receipt, of that date, wherein he acknowledged receipt from Odell of a quitclaim deed reconveying to him all of the property which he had theretofore conveyed in trust to Odell, and of all sums of money and other things of value collected by Odell as trustee. And also, that he released and forever discharged Odell of and from any and all further liability to him. The names of C. M. Thompson and Glenn Alcorn appear upon said receipt as witnesses to the execution thereof.

It further appears that Mr. Alcorn's employment by Charlie Clayton preceded the settlements with Speakman and Odell at least 60 days; and that prior to the date of said settlements Mr. Alcorn had made a thorough investigation in all of the cases wherein Speakman had rendered services for or on behalf of Charlie Clayton, and had also examined the court files pertaining to the guardianship of Clayton, together with accounts of Odell as guardian and as trustee. No charge is made, nor does the proof tend to establish, that any facts or information which Mr. Alcorn should have had before entering into said settlement was withheld from him. And if Mr. Alcorn, acting for Charlie Clayton, agreed upon and entered the settlements without being fully advised in the premises, the proof does not so show.

In view of facts which are herein mentioned, considered by us in connection with the record as a whole, we hold that the allegations of Clayton's cross-petition were not supported and established by the proof which he made; and the trial court adjudged properly that issues of fact were found against said cross-petition.

It has become an established rule of long standing that in cases of purely equitable cognizance coming to this court on appeal, the entire record will be examined and the evidence weighed, but that the judgment of the trial court will not be reversed unless it appears as being against the clear weight of the evidence. McAllister v. Clark, 91 Okla. 205, 217 P. 178; Mitchell v. Tulsa Building & Loan Ass'n, 177 Okla. 468, 60 P.2d 764. In this present appeal we hold that rule is applicable. And having examined the record, we are of the opinion that the judgment of the trial court is not clearly against the weight of the evidence, and that said judgment should be affirmed.

Judgment affirmed.

OSBORN, C. J., and RILEY, PHELPS, CORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, J., absent.