KING et al. v. CADE et al.

No. 34300.   Dec. 4, 1951.

Rehearing denied Jan. 29, 1952.

*240 P. 2d 88.*

Randall Pitman, Shawnee, for plaintiffs in error.

Reily, Reily & Spurr, Shawnee, for defendants in error.

PER CURIAM. A. M. King and Vollie M. King, as plaintiffs, instituted this action in the lower court against C. M. Cade, Jr., and Bertha E. Cade, as defendants, to obtain a mandatory injunction requiring the defendants to remove a dam which the latter had constructed along the property line separating the litigants' farms. The Kings have appealed from an adverse judgment.

The record in this case is long, and the testimony of witnesses for the respective parties is, for the most part, in conflict regarding the salient feature of the controversy; nevertheless, the equitable considerations which caused the trial judge to deny the Kings relief are quite apparent.

In 1926 the Cades owned the northwest quarter of section 1, township 10 north, range 2 east, Pottawatomie county, Oklahoma. During that year they sold the north half of this quarter-section to the Kings and from that date to the commencement of this action the Kings and the Cades farmed their separate 80-acre tracts with no dispute arising regarding the use or improvement of their respective lands. The entire quarter-section is bottom land and may be described as a plane. In conformation it is distinguished by a few shallow natural basins and equally shallow meandering drainways or depressions. The land slopes from northwest to southeast, which is to say, from

the Kings' land to the Cades' land below.

County roads, adequately drained by bar ditches, mark the northern and western boundaries of the quarter-section and to the east the Deer Creek drainage ditch traverses the Kings' farm from northwest to southeast. The result of these improvements is that under normal weather conditions the only water draining off the Kings' land is that which falls on it. It is not disputed that there has always been some drainage of water on to the Cade tract from the land to the north.

In the fall of 1945, the Kings brought dirt moving equipment to their farm and caused three or four basins to be filled in and two natural drainways to be deepened to aid in carrying off rainfall, including the rainfall which would no longer collect at the sites of the basins. One of Kings' witnesses who assisted in this work describes the drains as being about 12 inches deep, approximately 14 feet wide, and "capable of channeling most any amount of water." In working over the drainways the irregular courses of the natural channels leading towards the Cade farm were straightened which had the effect of accelerating the speed of any water passing through them.

At the common boundary of the two farms the land is somewhat lower than that surrounding it, which forms another basin of approximately 20 acres in areal extent. In September of 1946, the Cades built a dam at this low point on the common boundary which blocked the passage of water from the Kings' farm to the north. This dam, about 10 feet high and 75 yards in width, marked the site where the reworked channels on the Kings' land converged. With the completion of the dam, water which collected on the Kings' farm was impounded at the basin along the boundary line and the Kings were thereby prevented from cultivating 15 or 20 acres of land which was damaged by the collected water. Before the dam was built, but after the

surface changes were made to the upper lands, the rainfall draining from the Kings' farm moved at accelerated speed through the altered drainways and the volume of water was increased by reason of the fact that the basins on the Kings' land which theretofore had impounded a part of the rainfall were now filled in.

The Cades contend that it was necessary to erect this dam to prevent their farm being cut in two by the channeling of the water. They argue that the Kings had no right to fill in the basins and alter the natural drainways and thereby throw down upon their land a volume of water which would cause large damage. It is the Kings' position that the work performed on the natural drainways did not constitute the construction of new channels and therefore the Cades had no right to halt the natural drainage of water by erection of a dam.

We are convinced that in deepening and straightening natural channels of drainage and in filling in basins which had always impounded water, the Kings made substantial changes in the topography of their farm and that in so doing a new hazard of water damage was thrust upon the Cades.

This, of course, is an equity case and was tried by the lower court without the intervention of a jury. The judgment of the trial court is not contrary to the weight of the evidence, but, on the other hand, finds ample support from the record. Under the rule of law we adhere to, this would be sufficient to affirm the judgment. See Clayton v. Speakman, 182 Okla. 86, 76 P. 2d 376, and Payne v. Wade, 190 Okla. 222, 122 P. 2d 144.

However, there is another matter which deserves consideration. The reciprocal rights and duties of upper and lower landowners in connection with the disposition of surface waters are well established by the jurisprudence of this state. For a long period of time this court has given its approval to the

"common enemy" doctrine as modified by the rule of reason. Jefferson v. Hicks, 23 Okla. 684, 102 P. 79; Chicago, R. I. & P. R. Co. v. Groves, 20 Okla. 101, 93 P. 755. A succinct statement of our law is found in Gulf, C. & S. F. Ry. Co. v. Richardson, 42 Okla. 457, 141 P. 1107, which reads in part as follows:

"The common law governing the diversion of surface water as adopted and applied in this state has been modified and restricted to this extent, namely, that each proprietor may divert the same, cast it back or pass it along to the next proprietor, provided he does so without injury to such adjoining proprietor. Under this rule of law no one is permitted to sacrifice his neighbor's property in order to protect his own."

As mentioned earlier, there is a conflict in the testimony concerning the physical characteristics of the drainways on the Kings' farm as they existed before and after the surface alteration of the land. That these drainways were natural channels leading toward the Cades' farm is clearly proven, but there is one impelling fact which points to the conclusion that the artificial changes made to the Kings' farm brought new burdens to the Cades which they had the legal right to avoid. That undisputed fact is, that for 20 years prior to the time these surface changes were made, the litigants farmed their respective lands without any difficulties arising regarding the drainage of waters. From this it is reasonable to assume that water drained upon the lower lands in a diffused condition and in accordance with natural laws. However, when the channels of the natural drainways were straightened and deepened and several impounding basins leveled on the Kings' farm, an artificial volume of water was precipitated on the lower lands and this water the Cades had a right to repel.

The judgment is affirmed.

This court acknowledges the services of Attorneys Hulette F. Aby, Valjean Biddison, and Hughey Baker, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

HALLEY, V. C. J., and CORN, GIBSON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.