2001 OK CIV APP 25

**KIRBY–SMITH MACHINERY, INC., Plaintiff/Appellant,**

v.

**The CITY OF OKLAHOMA CITY, Defendant/Appellee.**

**No. 94849.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 3, 2000.

Certiorari Denied Feb. 1, 2001.

George Nelson, James A. Choate, Jason A. Soper, Oklahoma City, OK, for Plaintiff/Appellant.

Susan D. Randall, Assistant Municipal Counselor, City of Oklahoma City, Oklahoma City, OK, for Defendant/Appellee.

BUETTNER, Judge:

¶ 1 Kirby–Smith Machinery, Inc. sued Oklahoma City for a declaratory judgment in respect to dirt excavated by City pursuant to the temporary and permanent easements it had acquired through eminent domain proceedings. City's purpose was to install a drainage channel. It then intended to exchange the excavated dirt with a third party for another easement. Kirby Smith Machinery acquired title to the property after the eminent domain proceedings. The previous owner had accepted $70,000 as fair compensation for the taking. Kirby–Smith Machinery wanted to use the dirt as fill on the property. The court granted City's motion for summary judgment on the ground of *res judicata*, stating that ownership of the excavated dirt should have been raised in the condemnation case. We reverse.

¶ 2 City submitted the following evidence:

1. City Council resolution of October 20, 1998, for temporary and permanent easements for certain tracts for "the purpose of a Storm Drainage Structure and uses incidental thereto;" directing acquisition by the power of eminent domain; directing negotiation with the owners and settlement of damages, if any; but if negotiations failed, then directing acquisition by condemnation.

2. Affidavit of Paul Brum, Director of Public Works Department of the City of Oklahoma City, stating that excavation of soil was necessary and that he offered the owner of the property the excavated dirt in exchange for the easement. The owner refused the offer. Brum stated that he explained to the owner that if the City gained the easement through a condemnation proceeding, the owner would not be allowed to retain the dirt. (Property owner states in his affidavit, however, that City told him that the question of the excavated dirt was between him and the contractor hired to excavate.)

3. Petition and Application to Summon and Appoint Commissioners. The petition states that the public necessity required the "taking, appropriating, acquiring and condemning of temporary and permanent easements for storm drainage, and utility purposes over, across, under...." The petition prays that the Commissioners appointed consider the "damage, if any, which the Defendants will sustain by reason of the taking, appropriating and acquiring temporary and permanent easements for public storm drainage, and utility purposes over, across, under and to said property...."

4. Legal descriptions of the property in question.

5. Order Appointing Commissioners, including the directive that the Commissioners consider the injury which owners of the property will sustain by reason of the appropriation of the property, including all damages to the owners occasioned, or to be occasioned by the appropriation, including damages to the remaining properties.

6. Commissioners' Report, assessing damages at $70,000.

7. Affidavits of two Commissioners stating that the excavated dirt was not a distinct item of damages, separate from the easement, but was valued as one whole unit.

8. Notice of the Condemnation proceedings.

9. Court docket revealing no objection filed and no jury trial on damages requested by owners.

10. Journal Entry Confirming Condemnation Case.

11. Page of transcript revealing subsequent owner paid $240,000 for the land and the dirt.

12. Letter from real estate broker regarding the Kirby Smith transaction, stating that Kirby–Smith was willing to pay $240,000 contingent upon Buyer receiving, at no cost, all of the dirt excavated from the channelization project.

¶ 3 What is absent is evidence or law that the ownership of the excavated dirt should have been raised in the condemnation action. The language of the City Council resolution, Petition, Commissioners' Report, and Journal Entry Confirming Condemnation Case do not specifically cover the excavated dirt. Cf. *U.S. v. 79.20 Acres of Land,* 710 F.2d 1352, 1355 (8th Cir.1983)("The easement granted the government extensive rights over the land. Among other things, it allowed the government to 'construct, operate, and maintain channel improvement works on, over, and across the land' and 'excavate, dredge, cut away and remove any or all of said land and to place thereon dredged or excavated material'.")

¶ 4 City was granted an easement which does not, on its face, give it any interest, absent specific contractual language, to the excavated dirt. "Easements are limited to the particular purpose for which they are created and their enjoyment will not be enlarged by implication. [Citations omitted.] The fee owner can fully exercise his rights of ownership in any manner and for any purpose not inconsistent with the easement and the dominate estate owner may not interfere with such use. [Citations omitted.]" *City of*

*Elk City v. Coffey,* 1977 OK CIV APP 5, 562 P.2d 160, 163.

¶ 5 It is axiomatic that where private property is taken by eminent domain, damages are determined as of the time the property is taken. *Oklahoma Turnpike Authority v. Burk,* 1966 OK 113, 415 P.2d 1001, 1005. In the case at bar, where the grant of easement did not specifically reserve the excavated dirt, the presumption is that the dirt is the personalty of the fee owner. Consequently, Kirby–Smith Machinery, upon threat of conversion of its personal dirt, properly filed its action for declaratory judgment, accompanied by the request for issuance of a temporary restraining order.

¶ 6 In *Curtis v. WFEC R.R., Co.,* 2000 OK 26, 1 P.3d 996, the Oklahoma Supreme Court held that damages, caused when the easement holder exceeded the scope of the grant of the easement, were recoverable in a lawsuit sounding in tort. In *Curtis,* the landowners claimed that the defendant exceeded the scope by burying large amounts of debris on their property. They further claimed that they could not tell from the condemnation petition or the Commissioners' report that defendant would use the property essentially as a landfill. *Id.* at 999. The Oklahoma Supreme Court concluded:

Pursuant to the Okla. Const. art. 2, § 28, a landowner is entitled to full compensation for damages including those for a condemnor's tortious conduct. In a condemnation proceeding, a condemnee bears the burden of establishing damages. Nothing in the prior Court of Civil Appeals' opinions indicates that the landowners have had the opportunity to fully litigate the issue of damages resulting from the allegations that the railroad exceeded the scope of the temporary easement which it obtained through condemnation proceedings. The remedy for an injury to the land which is not necessarily incident to the construction and operation of a public improvement for which the land is taken, but due to wilful or negligent construction or operation is through a separate and distinct cause of action such as trespass.

*Id.* at 1001.

¶ 7 There is nothing in the September 29, 1999 Journal Entry Confirming Condem-

nation Case that would advise the landowner that City intended to excavate a drainage channel and remove the excavated dirt for an exchange with a third party. Thus, whether City was intending to exceed the scope of the easements could be raised by Kirby–Smith Machinery in its declaratory judgment action. There appears to be an issue of disputed material fact, i.e., whether the removal of the excavated dirt was within or without the scope of the easements. This issue cannot be decided on the basis of *res judicata.*[1] *Also see U.S. v. 79.20 Acres of Land,* 710 F.2d 1352, 1356, n. 6 ("Damages incurred after a taking are not compensable in a condemnation proceeding.")

¶ 8 For these reasons, the court erroneously granted summary judgment in favor of City on the ground of *res judicata.* We REVERSE the judgment and REMAND the matter for proceedings consistent with this opinion.

¶ 9 JONES, P.J., and GARRETT, J., concur.

---

1. It also appears disputed whether the excavated dirt was an item of damages in the Commissioners' Report. While two Commissioners allege the excavated dirt was included in the total award, the formula for assessing the total award was alleged to be "the difference between the fair market value of the whole property immediately before the taking and the fair market value of the portion left immediately after the taking." However, there is no evidence that the Commissioners knew that City would remove 50,575 cubic yards of dirt. Under City's argument, it could obtain an easement and remove unlimited amounts of soil to use on its project, or at least the minimum amount necessary for the channel on landowner's property, and then use or sell the dirt at its discretion.