2010 OK CIV APP 143

**Joe TIDWELL, Individually, Plaintiff/Appellee,**

v.

**Robert BEZNER and his spouse, Jean Bezner, Defendants/Appellants.**

No. 107,474.

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 26, 2010.

Thomas T. Ellis, Ellis, Buckholts & Hicks, Duncan, OK, for Plaintiff/Appellee.

Jeffery K. Archer, James L. Kee, Kee & Archer, P.A., Duncan, OK, for Defendants/Appellants.

DOUG GABBARD II, Presiding Judge.

¶ 1 Defendants, Robert and Jean Bezner (collectively, Bezner), appeal the trial court's grant of a permanent mandatory injunction requiring them to remove a gate which restricted passage across a roadway easement granted to Plaintiff, Joe Tidwell. Because the trial court did not abuse its discretion, we affirm.

## FACTS

¶ 2 This appeal concerns a disagreement between neighbors in a rural part of Stephens County. The facts are essentially undisputed.

¶ 3 Tidwell lives on 20 acres directly north of Bezner's 25–acre tract. Tidwell accesses his home and property over a roadway easement through Bezner's property which he obtained from Bezner's predecessor. The easement grants Tidwell "a non-exclusive, non-divisible and non-apportionable easement for private roadway purposes ... said private road and right-of-way easement being 18 feet in width."

¶ 4 About ten years ago, Bezner erected a fence between his land and Tidwell's in order to raise cattle. He contacted Tidwell and the two discussed adding a gate across the roadway easement in order to keep Bezner's cattle out of Tidwell's property. Tidwell did not want a gate and instead installed a cattle guard at his own expense. The cattle guard was 7″ deep. Bezner claims the guard was never effective and that cattle crossed into Tidwell's property two or three times a week during the spring. Tidwell said the cattle guard was effective, and cattle had only crossed it twice. Bezner testified that he asked Tidwell if he could make the cattle guard deeper, but Tidwell refused because of water lines under the cattle guard. Tidwell testified that he didn't care if the cattle came onto his property.

¶ 5 In 2008, Bezner installed a drive-through electric gate or "bump gate" between his and Tidwell's property across the easement. The bump gate consists of two horizontal metal bars or arms which swing together to block passage, each one connected to a post on opposite sides of the road. Each arm has electrified wires hanging every few inches along its length to discourage animals from pushing against them. The gate may be opened by a remote control device, or by merely bumping it with a vehicle. Bezner testified that he chose the bump gate because he knew that any other gate would be difficult for Tidwell, who uses a wheelchair, to open.

¶ 6 Tidwell responded by filing for an injunction. He sought to have the gate removed as an unreasonable burden upon his easement. Bezner answered that the gate did not inhibit Tidwell's right of passage or use of his easement.

¶ 7 At the hearing, Tidwell conceded that the gate did not block his easement because he could still drive through the gate crossing it. However, he said that the wires on the bump gate would hit him in the face when he had his car window down. Further, Tidwell was concerned about the safety of his visitors and his grandchildren who often played in the yard next to the gate. Tidwell also called two witnesses. One, a local rancher, testified that the cattle guard was sufficient to keep cattle out and, if not, it could be ramped.[1] The rancher also testified that the bump gate might cause damage to a vehicle. Another witness, a local realtor, testified that the bump gate had devalued Tidwell's property and made it difficult to sell.

¶ 8 Bezner responded that he could adjust the gate so that the electrical lines would not go into Tidwell's open car window. He also said he had cleaned out the cattle guard many times and it was just too shallow to be effective.

¶ 9 The trial court granted the injunction, and ordered Bezner to remove the gate and either maintain the cattle guard or ramp it. The court stated, in part:

6. Oklahoma law is such that an owner of land subject to an easement may maintain gates where such obstructions do not unreasonably interfere with the use of the easement, *and if such obstructions are necessary to said land owner's use and enjoyment of the servient estate.* Such obstructions should not make the use of the easement less convenient and beneficial than before. Whether or not the proposed obstruction meets these qualifications is a question of fact to be determined from the exigencies of each particular case;

---

1. The terms "ramped" or "ramping" refer to raising the height of the cattle guard, in this case by one or more feet. In order to do so, the parties would have to construct a metal or dirt ramp leading up to and away from the cattle guard.

7. Plaintiff has established, by clear and convincing evidence, that the "bump gate" does unreasonably interfere with his use and enjoyment of the servient estate. The evidence clearly establishes that Defendant's use and enjoyment of the servient estate can be accomplished with a properly maintained cattle guard or ramped cattle guard at the same location. Said guards should be maintained at Defendant's expense.

Bezner appeals.

## STANDARD OF REVIEW

¶ 10 A party seeking an injunction must establish his right to such relief by clear and convincing evidence, and the nature of the complained of injury must not be nominal, threatened, or speculative. *Sharp v. 251st Street Landfill, Inc.*, 1996 OK 109, 925 P.2d 546. The grant of, or refusal to grant, an injunction is largely a matter within the trial court's discretion, and its judgment will not be disturbed on appeal absent an abuse of discretion or a judgment clearly against the weight of the evidence. *Sharp* at ¶ 4, 925 P.2d at 549; *Johnson v. Ward*, 1975 OK 129, ¶ 42, 541 P.2d 182, 188.

## ANALYSIS

¶ 11 Bezner first asserts the trial court's decision is clearly against the weight of the evidence. He argues that the gate does not unduly prevent Tidwell from using his easement because Tidwell admitted he still "drives right through it." He relies on *Lindhorst v. Wright*, 1980 OK CIV APP 42, ¶ 10, 616 P.2d 450, 454, holding that a fee owner may use land burdened with an easement in a reasonable manner "that does not unduly burden the use made by the easement owner." He also relies on decisions of other states holding that gates may be erected as long as they do not "unreasonably . . . interfere with the right of passage." *See e.g., Foshee v. Brigman*, 174 Tenn. 564, 129 S.W.2d 207, 208 (1939).

¶ 12 In *Lindhorst*, the original owner of realty granted to plaintiffs a "perpetual right of ingress and egress on and across the easterly 40 feet of the SW/4 of the SW/4 of Section 14." *Id.* at ¶ 2, 616 P.2d at 452. The owner then built a 20–foot wide road for the Lindhorsts through the strip. After the grantor sold the land, the new owners began planting trees and stacking brush on the road. The Lindhorsts sought an injunction, claiming that the servient owners' actions were "uses inconsistent" with his easement. The trial court reduced the Lindhorsts' access to the width of the actual road they were using, granted the Lindhorsts and the defendants non-exclusive use of the road, and assessed the maintenance thereof to all parties in different proportions.

¶ 13 On appeal, we held that an easement is a contract which must be interpreted as any other contract, that the language of the easement clearly gave the Lindhorsts a 40–foot wide easement, and therefore, that part of the trial court's judgment was reversed. We also stated, in part:

Easements do not vest title in their possessors, they simply grant them a limited use of the fee holder's property. *City of Elk City v. Coffey*, Okl.App., 362 [562] P.2d 160, 163 [ (1977) ]. Just as the express language of the grant controls the extent of the easement, it also controls the scope. The limited use granted the Lindhorsts is a right to use the land of the defendants as a passageway to their property. There is no language indicating that such usage is exclusive to the Lindhorsts. Absent such express language, *the fee owner may use the land upon which the easement is imposed in any reasonable manner that does not unduly burden the use made by the easement owner* . . . . The holding of the trial court that the parties have a non-exclusive right to the easement is proper. But the Lindhorsts assert that other acts of the defendants, such as the planting of gardens and trees on the easement, and the stacking of brush thereon should be enjoined.

The denial of an injunction lies within the sound discretion of a trial court and will not be disturbed on appeal unless clearly against the weight of the evidence. *City of Bartlesville v. Amber [Ambler]*, Okl., 499 P.2d 433, 437 [ (1971) ]. An injunction does not lie for every act completed or threatened, but is appropriate if in

light of all the facts equity would require its issuance. *Leathers v. Commercial National Bank,* Okl., 410 P.2d 541, 545 [ (1965) ]. Although none of the acts of the defendants obstruct the present roadway through the 40 foot easement, the Lindhorsts are entitled to relief. Where obstructions are of a continuous, material, and permanent nature and under a claim of right, which could eventually destroy the easement by adverse possession, an injunction is appropriate. 25 Am.Jur.2d Easements & Licenses § 120, at 523. The defendants' use of the easement is restricted in this case to a right of ingress and egress or other uses not inconsistent with that of the easement owner. The planting of crops and trees and the use of the easement for the stacking of brush are uses inconsistent with the easement owner's use. Such uses by the defendant should be enjoined.

*Lindhorst,* ¶ 10–11, 616 P.2d at 454 (emphasis added).[2]

■ ¶ 14 *Lindhorst* follows the rule that a servient owner may use the land upon which an easement is imposed in any reasonable manner that does not *unduly burden* the use made by the easement owner or which is not contrary to the terms of the easement. What constitutes an undue burden depends upon the facts and circumstances of each case, and requires weighing the reasonableness of interference by the servient owner against the disadvantage to the easement holder. In doing so, a court must remember that some degree of inconvenience for both parties is to be expected and tolerated in weighing these overlapping rights, and the party seeking an injunction must establish the necessity thereof by clear and convincing proof.

¶ 15 Obviously, every gate across a right of way is an obstruction to a greater or lesser extent. Nevertheless, unless it is an undue burden, most jurisdictions allow servient owners to place gates and cattle guards across easements, especially where the land is used for agricultural purposes, such as for confining cattle. *See Hammond v. Lovvorn,* 16 So.3d 813 (Ala.Ct.App.2009); *Massee v. Schiller,* 243 Ark. 572, 420 S.W.2d 839 (1967); *Hunt v. Richardson,* 216 Ariz. 114, 163 P.3d 1064 (App.2007); *Fortner v. Eldorado Springs Resort Co.,* 76 Colo. 106, 230 P. 386 (1924); *Tanaka v. Sheehan,* 589 A.2d 391 (D.C.Ct.App.1991); *Mann v. Phelps,* 269 Ky. 493, 107 S.W.2d 288 (1937); *Webb v. Finley,* 806 S.W.2d 501 (Mo.Ct.App.1991); *Rowell v. Turnage,* 618 So.2d 81 (Miss.1993); *Ericsson v. Braukman,* 111 Or.App. 57, 824 P.2d 1174 (1991); and *Foshee et al. v. Brigman,* supra.[3] *See also* 28A C.J.S. "Easements" § 180 (1996).

■ ¶ 16 In the present case, the written easement granted Tidwell a "non-exclusive" easement for ingress and egress. Thus, Bezner, the servient owner, retained the right to use the land in any reasonable manner that was not unduly burdensome to Tidwell's use. Clearly, Bezner's desire to restrict cattle from passing over the easement into Tidwell's property was reasonable: He wanted to keep his cattle penned and had a legal obligation to do so. The question is whether the method used to do so was, under all the circumstances, unduly burdensome to the easement.

¶ 17 In this regard, Tidwell admitted that the bump gate did not bar access to his property. However, he presented evidence that the electrical lines attached to the gate posed a danger to himself, his visitors and his grandchildren, that bumping the gate could possibly damage vehicles which passed through, and that the bump gate had devalued his property. He also presented evidence of a simple, alternative solution for keeping the cattle out of his yard—properly maintaining the cattle guard or ramping it. Although Bezner presented conflicting evi-

---

**2.** *See also Western Farmers Elec. Co-op. v. Enis,* 1999 OK CIV APP 111, ¶ 23, 993 P.2d 787, 794 (referring to the landowner's right to non-interfering uses of the easement).

**3.** Several of these cases involved the court's approval of the use of *locked* gates. For additional comments about gates and cattleguards across rights of way, see 25 Am.Jur.2d "Easements and Licenses" § 88 (2004), and Annot., "Right to Maintain Gate or Fence Across Right of Way," 52 A.L.R.3d 9 (1973).

dence, the trial court clearly resolved the factual conflicts in favor of Tidwell and balanced the equities before reaching its decision.

¶ 18 Where there is conflicting evidence on an issue of fact, we defer to the judgment of the trial court, which is in the best position to observe the behavior and demeanor of the witnesses and to gauge their credibility. *Mueggenborg v. Walling*, 1992 OK 121, 836 P.2d 112. Accordingly, we find that the trial court's decision is not clearly contrary to the weight of the evidence, has a rational basis, and does not constitute an abuse of discretion. *See Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir.1995).

¶ 19 Bezner also asserts the trial court abused its discretion by acting contrary to the Supreme Court's precedent. He refers to the following language in the trial court order:

> Oklahoma law is such that an owner of land subject to an easement may maintain gates where such obstructions do not unreasonably interfere with the use of the easement, and *if such obstructions are necessary to said land owner's use and enjoyment of the servient estate.* **Such obstructions should not make the use of the easement less convenient and beneficial than before.** (Emphasis in bold added).

¶ 20 As we have noted above, although an obstruction's effect upon the easement should be considered in determining whether it is an undue burden, an obstruction may be permitted even when it makes an easement less convenient and beneficial. Thus, while the trial court's language was not precisely correct, we have long followed the rule that a trial court's decision will be affirmed as long as the result is correct, even if an incorrect reason is employed. *Kahre v. Kahre*, 1995 OK 133, ¶ 51, 916 P.2d 1355, 1366. Here, the trial court weighed the equities and found clear and convincing evidence that the bump gate was unduly burdensome and should be replaced by a more reasonable alternative. We find no error in its decision.

## CONCLUSION

¶ 21 For all these reasons, we find that the trial court's order was not an abuse of discretion or against the evidence. Accordingly, its decision is affirmed.

AFFIRMED.

RAPP, J., and GOODMAN, J., concur.