2012 OK CIV APP 28

**Ike BARRETT and Oleta Barrett, Plaintiffs/Appellees,**

v.

**Bobby Joe HUMPHREY and Pearl Humphrey, Defendants/Appellants.**

No. 108,030.

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 14, 2012.

Lloyd E. Cole, Jr., Stilwell, Oklahoma, for Plaintiffs/Appellees.

William K. Orendorff, Matthew R. Orendorff, Sallisaw, Oklahoma, for Defendants/Appellants.

JANE P. WISEMAN, Judge.

¶1 Bobby Joe Humphrey and Pearl Humphrey appeal an order of the trial court finding them negligent and awarding damages to Ike Barrett and Oleta Barrett in this action to recover for damage to a bridge on a road located on property owned by the Humphreys but used for ingress and egress by the Barretts. On appeal, we consider the issue of whether the trial court properly found (1) that the Barretts proved that they possessed an easement on the Humphreys' property and (2) that the Humphreys unreasonably interfered with that property right through their negligence. Having reviewed the record and applicable law, we conclude that the trial court's judgment that the Barretts had previously established their right to an easement on the Humphreys' property is not supported by the evidence.[1] Because the trial court erred in determining the issue of whether an easement had been established, the Humphreys' motion to reconsider should have been granted. We therefore reverse the order of the trial court and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The Barretts filed a petition for trespass and damages against the Humphreys claiming that they are the "owners of a utility easement and ingress-egress easement that traverses upon and adjoins real property owned by the [Humphreys]." The Barretts did not include a detailed property description of their property, the property over which they claim an easement, or the easement itself. The Barretts alleged the Humphreys "have obstructed the right of ways of the aforesaid easements by placing thereon various and sundry items of useless and deteriorated property best defined as 'junk' and has [sic] also diverted surface water upon the aforesaid easements to the detriment and damage of the [Barretts]." The Barretts also alleged the Humphreys constructed a pipe which diverted water onto the easement. The Barretts sought damages as well as a permanent injunction. The Humphreys then asserted a counterclaim against the Barretts for trespass.

¶3 A non-jury trial was held on October 30, 2009. The trial in this case was consolidated with the trial of another case, CV–

---

1. We grant in part and deny in part the Humphreys' motion to supplement the record on appeal. The Humphreys sought to supplement the appellate record with three exhibits. One of the exhibits is the final judgment in Case no. C–82–16. The trial court clearly considered the final judgment in Case no. C–82–16 during the trial conducted in this case, as consolidated with CV–2007–414. Therefore, we find it is appropriate to include the final judgment from Case no. C–82–16 in the appellate record. We decline to allow the Humphreys to supplement the record with two other exhibits from the 1982 case (the petition filed January 20, 1982, and a partial journal entry of judgment from October 5, 1983) because there is no indication the trial court considered those documents in the case below.

2007–414, *Bob Humphrey, et al. v. Kenneth Martindale,* a case involving the Humphreys' claim of a right to use a portion of the road at issue in this case that traverses Martindale's property.

¶ 4 At trial, J.B. Thomas testified that the road was still being used as a public road in 1980 or 1985 but is no longer used as a public road. Judy Barrett, Ike's former wife, testified that the road goes through her property and ends at Ike's property. She stated Bob Humphrey consistently used the road from 1982 through 1993.

¶ 5 Bob Humphrey testified that although he acquired his property in 1966, he had used the roadway in question all his life (at the time of trial he was 78 years old). He never asked anyone permission to use the road because it was a county road. After he bought additional property in 1977, he started using the road more in order to access his barn. He once put a gate across the road at the entrance to his property, but he removed it after a county commissioner told him to do so. He continued to use the road from 1997 through 2007. In May 2007, however, the Martindales placed a cable across the road to deny him access, but they did not deny Ike Barrett access. Bob Humphrey asked the court to determine that he has a prescriptive easement as to the portion of the road across the Martindale property.

¶ 6 Before the Martindales owned their property, E.C. Stewart and D.C. Stewart sued both Humphrey and Ike Barrett after Humphrey placed a gate across the road (Case no. C–82–16). The trial judge in the present case stated that the journal entry in the 1982 case gave "Mr. Barrett and Mr. Humphrey both access to their properties through the use of that road, but nobody else."

¶ 7 Humphrey testified that he has equipment on his property on the north side of the road. Some of the equipment has been there for 10 or 15 years, but other pieces have been there only two or three years. He placed the equipment and barrels on the property because he was selling them as part of his business. Humphrey further testified that the barrels he sold did not have lids.

¶ 8 Kenneth Martindale testified he put a cable across the road because there was too much traffic on it and Bob Humphrey claimed he had a right to use the road to cross Martindale's property.

¶ 9 Ike Barrett testified that he lives one-half mile northwest of where the road in question intersects the county road. He claims the road is primarily for his and his family's use and that Bob never objected to his use of the road, which traverses Bob's property. Ike claims he has maintained the road from 1974 to the present at his own expense and that he gave Bob permission to use the road for fire control purposes.

¶ 10 Although the road crosses Bob's property, Ike claims that he rescinded permission for Bob to use the road. However, Ike acknowledged that he had nothing in writing from Bob to evidence an easement in Ike's favor over the property, that he had never sued Bob for use of the road, and that he had never made or had determined any claim to a prescriptive easement to the road across Bob's land. Ike's only claim to the road, beside his use of it, came from the decision in the Stewarts' lawsuit against Bob and Ike. He further testified that no one has ever questioned his right to use the road and that he has performed all of the upkeep on the road.

¶ 11 In 1982, the Barretts constructed an earthen bridge on the roadway as it crosses the creek. Pictures introduced into evidence show a series of six large pipes in the stream at the point where the road crosses the creek. The dirt road travels over the pipes. The road and the bridge at this location are on the Humphreys' property.

¶ 12 John Dillard, a dirt contractor who builds road pads, testified on behalf of the Barretts. Ike formerly worked for Dillard as an employee and had previously performed work on the road in question. There was a rainstorm of approximately 5.8 inches during the night of April 8–9, 2008. Dillard testified that Ike called him in April 2008 after the rainstorm and told him the road had washed out. Dillard went out to look at the road and saw a lot of erosion damage at the place where the pipes had been placed to facilitate the flow of creek water under the

road. He testified there were some items on the Humphreys' property that obstructed the flow of water including two lawn mowers, some concrete, and a brush hog. As to the equipment along the road, Dillard stated, "Most of them weren't hurting anything." But the two lawnmowers located in the overflow drainage were "causing a problem." Dillard estimated the cost to repair the bridge at $4,875.

¶ 13 On cross-examination, Dillard agreed that he could not say with a reasonable degree of certainty that the lawnmowers caused the erosion. Dillard has no training in road engineering. He did state that a six-inch pipe placed in the ditch by the Humphreys along the road west of the bridge was responsible for the road erosion. He also stated that the other items placed by the road on the Humphreys' property just slowed the overflow of water and caused it to back up in the road. Dillard agreed that the equipment, the barrels, and "everything else out there, has no significance to this lawsuit," saying that some equipment slowed the water, but he could not conclude that these caused the erosion and damage to the road and bridge. He concluded, "[T]here's no doubt about it, it's obvious that [the six-inch pipe] could not handle the water and it come out into the road and caused that erosion."

¶ 14 According to Ike, Bob started storing things on his property after Ike was listed as a witness against Bob in another lawsuit. Ike claims the barrels Bob placed on the property would blow into the road. Ike notified Bob that the items on the property were interfering with Ike's use of the road and that there was a problem with the six-inch pipe not being big enough to handle the water in the ditch.

¶ 15 There have been no modifications to the bridge since it was constructed in 1982. Ike testified there have been 2 or 3 previous rains of 5.2 inches or so and there has never been a problem with the bridge pipes handling the water. In the more than 20 years Ike had observed the functioning of the spillway (the area along the road approaching the bridge), the water had on one occasion started into the spillway but had never been needed to handle the water because the pipes in the stream had always worked to carry the water volume.

¶ 16 Ike testified that with a forecast for heavy rain on April 9, 2008, he went to check on the bridge and found no debris around it. The next morning just after daylight, he went down and saw that several of Bob's barrels were gone as well as one of the lawnmowers. Ike testified that these items restricted the water, turning it down the road and creating extreme erosion. Ten days later, on April 19, 2008, Ike cleaned out the pipes in the stream under the road and found two barrel lids in front of two of the pipes. He testified that Bob had some barrels on his property with lids like the ones he found. However, the lids found in the pipes under the bridge were on the upstream side of the bridge, and the barrels on Bob's property had been on the lower, downstream side of the creek. The incident had eroded part of the roadway above the pipes. Ike testified he did not have any of those types of lids anywhere on his property. Ike told the court that the six-inch pipe and the "implements" caused all of the erosion problems, specifically the lids. He estimated it would cost $8,475 to fix the damage.

¶ 17 Jerry Clement, a resident engineer for the Oklahoma Department of Transportation with expertise in road construction, testified on behalf of the Humphreys. He performed a survey of the road in question, as well as a survey of the areas both upstream and downstream of the channel and a profile grade line of the road. Clement testified there are six pipes that are part of the bridge, but one is completely covered by a rock that caused erosion over it. The inlet in all of the pipes but one is lower than the outlet on the downstream side, a situation which restricts the area of the pipe for the water to pass through. He told the court that the erosion on the bridge was caused by excessive water speed which in turn was caused by the following circumstances: "One hundred feet upstream, the channel was a wide open with a gradual slope on the sides. At 25 and 50 feet upstream, the channel has been restricted on the east side. Yeah. The east corner. By approximately 45 percent, which is going to cause an increase in the

velocity." Clement stated that in a stream such as this one, "the velocity can be no greater than four feet per second before it begins causing erosion." He testified that the flood that caused the damage was a 25–year flood and the velocity would have been 9.46 feet per second. Clement gave the opinion that the pipes used to build the bridge were too small to handle the volume of water, causing water to back up over the roadway.

¶ 18 Clement stated the lawnmowers did not contribute to the erosion. As to the six-inch pipe that the Barretts alleged caused the erosion, Clement stated, "[t]he elevation of that pipe is approximately ten foot lower than the elevation of the roadway at the top of the crossing and approximately 450 feet away." Clement concluded the pipe "has absolutely no bearing on the crossing or the lower part of the road." Clement stated the pipe did not contribute to the road's erosion and there was no erosion near the road next to the six-inch pipe. Clement also said it would not have been possible for a person to place a barrel lid in front of the bridge pipes given the force of the flowing water. Clement said he did not see any equipment, barrels, rocks, or items belonging to the Humphreys that caused any of the road erosion and that he did not see any erosion outside of the crossing.

¶ 19 On cross-examination, Clement stated the water was three feet over the top of the roadway and there was "no possible way that it all went through those pipes." He said the barrel lids would have had no impact on the pipes being able to carry water. He attributed the water over the bridge to the channel being restricted, but testified the barrel lids would have restricted the flow only about ten percent and would have had no significant impact on the water flow.

¶ 20 According to Clement, his opinion that a person could not place the barrel lids in front of the pipes was based on the assumption that the water was flowing. However, before the rain, the lids could easily have been placed in front of the pipes. Clement stated that larger pipes could correct the

problems with the bridge. As built, the bridge could not handle the water flow.

¶ 21 The trial court in its October 30, 2009, journal entry of judgment held that the Barretts have an easement on the Humphreys' property for ingress and egress "established by judicial decree in the District Court of Sequoyah County, Oklahoma, Case No. C–82–16, dated May 30, 1986." The court found that the Barretts had erected and maintained an earthen bridge on the roadway, a bridge used and maintained by the Barretts without incident until the Humphreys' actions caused damage to the bridge. The court found that on April 8, 2009, a five-inch rainfall caused the culverts to overflow damaging the bridge and eroding portions of the roadway. The court stated, "Among the items adjoining the private road were barrels [the Humphreys] kept for sale from which two (2) barrel lids were found obstructing the culverts. These lids directly attributed [sic] to erosion and damage to [the Barretts'] easement, and in particular, the bridge." The court found the Barretts sustained damages of $4,225 as a result of the Humphreys' negligent conduct and granted judgment in favor of the Barretts for this amount. The court enjoined the Humphreys from further obstructing or impeding the flow of surface water. The court also found that the Barretts were entitled to a reasonable attorney fee pursuant to 12 O.S. § 940A.[2]

¶ 22 The Humphreys filed a motion to reconsider within 10 days which the trial court denied. The Humphreys appeal.

## STANDARD OF REVIEW

■ ¶ 23 "The denial or award of an easement is an exercise of the trial court's equitable cognizance, and its order will be affirmed on appeal unless it is found to be against the clear weight of the evidence or contrary to law or established principles of equity." *Mainka v. Mitchusson,* 2006 OK CIV APP 51, ¶ 11, 135 P.3d 842, 845. Because we regard the Humphreys' motion to reconsider as the legal equivalent of a motion for new trial, we will review the trial court's denial of the motion for abuse of discretion. *See*

2. By separate order nunc pro tunc on February 16, 2011, the trial court entered judgment for the Barretts on the Humphreys' counterclaim for trespass. This order has not been appealed.

*Reeds v. Walker,* 2006 OK 43, ¶ 9 & n. 4, 157 P.3d 100, 106–07.

## ANALYSIS

¶ 24 The Humphreys first assert that there is no evidence that the Barretts even had a property right to justify their claim. The trial court stated the Barretts have an easement for ingress and egress on the Humphreys' property. "[A] an easement 'is the right of one person to go onto the land of another and make a limited use thereof.'" *Mooney v. Mooney,* 2003 OK 51, ¶ 17, 70 P.3d 872, 876 (quoting *Story v. Hefner,* 1975 OK 115, ¶ 13, 540 P.2d 562, 566). "Easements may be expressly created by deed, or by necessity, or prescriptive use, or implied in a deed." *Id.*

¶ 25 In *Brown v. Mayfield,* 1989 OK CIV APP 32, ¶ 38, 786 P.2d 708, 713–14, this Court held that an order purporting to grant an easement was "so vague as to be void for the reason that it contains no legal description of the easement or the land so burdened." Similarly, in *James v. Board of County Commissioners of Muskogee,* 1999 OK CIV APP 47, ¶ 14, 978 P.2d 1002, 1004, this Court held that the trial court erred in failing to determine the precise location and width of a road that was the subject of a prescriptive easement. The Court stated, "The trial court's order does not state with particularity the description or dimensions of the road. *If a judgment purports to transfer real property, it must describe the particulars of that estate in sufficient detail that all will know its bounds.*" *Id.* (Emphasis added.)

¶ 26 Although the trial court in the present case found that an easement was established on property owned by the Humphreys in the order in Case no. C–82–16, neither the order in Case no. C–82–16 nor the order of the trial court here provides a legal description of the easement. The trial court order in this case merely states that the Barretts own property in "Section 8,

Township 12 North, Range 25 East, of Sequoyah County, Oklahoma," and that the Humphreys own property in the same section that is subject to an easement. The order in Case no. C–82–16 does not contain any legal description of the easement or of the servient estate.

¶ 27 The evidence in the record is not sufficient to determine the nature of the claimed easement. Although the trial court relied solely on the order in Case no. C–82–16 to conclude that an easement had been established, the order in the previous case is too vague to support that conclusion. Although the Barretts may well have a valid claim and may be able to establish an easement, the trial court erred in deciding that the previous 1986 court order established the Barretts' right to an easement when the order relied on does not state with specificity any description of an ascertainable easement.[3] Reliance on the previous order to establish the easement was misplaced, and the trial court should independently have decided this issue. Given this mistaken reliance, it was error to overrule the Humphreys' motion to reconsider, which clearly asserted the invalidity of the easement as a basis for reconsideration. We reverse the decision of the trial court and remand for further consideration.

¶ 28 On reconsideration, if the Barretts are able to establish the nature and extent of their claimed easement, the trial court must also revisit its conclusion that the Barretts established the Humphreys were negligent. Negligence cannot be found without first determining the exact nature of the duty owed by the Humphreys to the Barretts. "Duty depends upon the relationship between the parties and the general risks involved in the undertaking; and, whether a defendant stands in such relationship that the law will impose upon the defendant an obligation to the plaintiff is a question of law." *Bouziden v. Alfalfa Elec. Coop.,* 2000 OK 50, ¶ 14, 16 P.3d 450, 455–56.

3. Counsel for the Barretts, who was also defending Martindale against the Humphreys' claim, first pointed to this deficiency in his demurrer to the Humphreys' evidence against Martindale. He stated: "There is absolutely no legal description offered. No evidence admitted before this Court as to where this roadway is located. So therefore you can't quiet a title to a roadway that you don't have a legal description to."

¶ 29 The trial court based its decision on *King v. Cade*, 1951 OK 344, 240 P.2d 88, in which a landowner built a dam along the line separating his property from his neighbor's property. The Court in *King* held, "a proprietor may divert [surface water], cast it back or pass it along to the next proprietor, provided he does so without injury to such adjoining proprietor." *Id.* at ¶ 0, 240 P.2d at 88–89 (syl. no. 2 by the Court). According to the rule pronounced by the *King* Court, "no one is permitted to sacrifice his neighbor's property in order to protect his own." *Id.* at ¶ 0, 240 P.2d at 89 (syl. no. 2 by the Court).

¶ 30 The *King* case is clearly inapplicable to this case: we are not concerned here with surface water draining from one owner's land to his neighbor's. The issue we confront is whether a landowner caused damage to a bridge *on his own property* that is allegedly subject to the easement of another.

¶ 31 The owner of a servient estate " 'can fully exercise his rights of ownership in any manner and for any purpose not inconsistent with the easement and the dominant estate owner may not interfere with such use.' " *Kirby–Smith Machinery, Inc. v. City of Oklahoma City*, 2001 OK CIV APP 25, ¶ 4, 19 P.3d 331, 333 (quoting *City of Elk City v. Coffey*, 1977 OK CIV APP 5, ¶ 12, 562 P.2d 160, 163); *see also Margerison v. Charter Oak Homeowners Ass'n*, 2010 OK CIV APP 67, ¶ 10, 238 P.3d 973, 977 ("A servient tenant may make reasonable use of his property burdened by an easement, so long as such use is not inconsistent with the dominant tenant's rights under the easement."); *Tidwell v. Bezner*, 2010 OK CIV APP 143, ¶ 14, 245 P.3d 620, 623 ("[A] servient owner may use the land upon which an easement is imposed in any reasonable manner that does not *unduly burden* the use made by the easement owner or which is not contrary to the terms of the easement.").

¶ 32 According to the *Tidwell* Court, the question of what constitutes an "undue burden" must be determined by balancing the interests of the servient and dominant estate holders:

What constitutes an undue burden depends upon the facts and circumstances of each case, and requires weighing the reasonableness of interference by the servient owner against the disadvantage to the easement holder. In doing so, a court must remember that some degree of inconvenience for both parties is to be expected and tolerated in weighing these overlapping rights, and the party seeking an injunction must establish the necessity thereof by clear and convincing proof.

*Tidwell*, 2010 OK CIV APP 143 at ¶ 14, 245 P.3d at 623. We find the reasoning in *Tidwell* persuasive.

¶ 33 The general theme in these cases is that the Humphreys may use their land as they see fit provided that they do not unreasonably interfere with the Barretts' use of the road on which they claim an easement. However, this duty is not one-sided. The holder of an interest in a dominant estate also has a duty not to use the property in a manner that injures or damages the servient estate. *Cities Serv. Gas Co. v. Christian*, 1957 OK 247, ¶ 5, 316 P.2d 1113, 1115. There is also a general rule "that costs of repair and maintenance are the duty and right of the easement holder if there is no agreement to the contrary." *Lindhorst v. Wright*, 1980 OK CIV APP 42, ¶ 12, 616 P.2d 450, 454. It is clear that the duties between the servient and dominant estate holders run both ways.

¶ 34 If the Barretts do, in fact, have an easement for ingress and egress over the Humphreys' property, they are not prohibited from building a bridge to help ensure access to their property. This principle is stated in *Hammond v. Hammond*, 258 Pa. 51, 101 A. 855, 857 (1917), where the Pennsylvania Supreme Court stated:

The grantee of the free and uninterrupted use of a private road may improve it in such manner as to make it fit for the purpose expressed in the grant, and in so doing may construct a bridge over a ravine or creek, if it be done in such way as to cause the least practicable damage to the owner of the servient tenement; however, ample room must be left for the natural flow of the water, even in time of flood, except it be so great as to be beyond ordinary human experience, when it is re-

garded as an act of God, for which man cannot be held responsible.

However, the Barretts' right to design and build a bridge must be balanced against the Humphreys' property rights and use of the servient estate.

¶ 35 We do not conclude that the Barretts may not seek redress from the Humphreys for alleged unreasonable interference with the easement. Just as "[t]he owner of an easement has a right of action for interference therewith against the owner of the servient estate," 28A C.J.S. Easements § 243, "[a]n easement owner may maintain an action at law for damages for interference with the easement by the owner of the servient estate, and the owner of the servient estate may sue the easement owner for damages resulting from an improper exercise of the right granted." 28A C.J.S. Easements § 250.

¶ 36 The Barretts' claim against the Humphreys is grounded in negligence, that is, "the failure to exercise ordinary care to avoid injury to another's person or property." Oklahoma Uniform Jury Instructions–Civil No. 9.2. Did the Humphreys fail to do something a reasonably careful person would do, or do something a reasonably careful person would not do under the circumstances?

¶ 37 The trial court concluded that two barrel lids blocked the pipes and caused the damage to the bridge and the easement. As the trial court stated, "Common sense tells me that two barrel lids are going to stop the flow of water through those pipes and that's going to result in an over topping of the road causing damage to the road." The trial court further stated: "I don't think you [Bob Humphrey] did it on purpose, but you've got barrels out there and those barrel lids caused damage to the road." In its order, the trial court found: "These lids directly attributed [sic] to erosion and damage to [the Barretts'] easement, and, in particular, the bridge."

¶ 38 Although the Barretts claim that Bob intentionally placed the barrel lids in front of

the bridge pipes, there is no evidence to support this contention. The trial court did not agree with the Barretts on this point, specifically stating in its ruling that it could not believe that Bob Humphrey "went down and put two barrel lids in front of a culvert to flood his own property just so you would have a bad road. The same road that [Bob Humphrey] uses."

¶ 39 The trial court did not agree with the Barretts' witness, John Dillard, who stated that the six-inch pipe placed in the ditch by the Humphreys was responsible for the road erosion. Dillard also could not attribute the erosion to the items stored near the roadway, and the trial court did not find that any of the other equipment or items complained of by the Barretts damaged the bridge.[4]

¶ 40 The Humphreys assert on appeal that there is no evidence in the record to support the trial court's finding that the barrel lids came from the Humphreys' property. The Humphreys also take issue with the trial court's finding that the barrels were upstream from the bridge crossing. After examining the record, we agree that the record, without dispute, establishes that the barrels were downstream from the bridge. The ownership and mechanism of movement of the lids in question are issues to be addressed upon remand.

¶ 41 After determining the nature and extent, if any, of the Barretts' easement and the ownership and movement of the lids, the question before the trial court should have been whether Bob's location and use of the lids constituted negligence which *unreasonably* interfered with the easement. Bob testified that the barrels were used in his business. The fact that Bob had barrels on his property does not *per se* establish that he was negligent. Ike testified that for as long as he has lived on his property, during which Bob stored equipment and, for the last 2 or 3 years, stored barrels on his own property, water has never come over the spillway and the bridge functioned as designed.

4. The trial court's failure to find that either the six-inch pipe or the items, other than the lids, stored near the roadway caused the damage to

the bridge was not appealed and is therefore not an issue before us in this appeal.

¶ 42 "A negligent or careless act is not necessarily actionable negligence." *Dirickson v. Mings,* 1996 OK 2, ¶ 8, 910 P.2d 1015, 1018. A plaintiff must establish the following three elements for a successful negligence claim: "(1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom." *Consolidated Grain & Barge Co. v. Structural Sys., Inc.,* 2009 OK 14, n. 8, 212 P.3d 1168. Negligence is not equivalent to strict liability.

¶ 43 If the Barretts establish their easement, then they must show the Humphreys negligently stored lids on their property which unreasonably caused damage to the bridge thus interfering with the Barretts' easement. In relying on the law of easements and the duties imposed on both the servient and dominant estate holders, the Barretts' showing that lids somehow appeared in the bridge pipes may not be enough to establish actionable negligence on the part of the Humphreys which unreasonably interfered with the Barretts' easement.

## CONCLUSION

¶ 44 The trial court's judgment of October 30, 2009, finding that the Barretts had established in a previous case that they had an easement on the Humphreys' property and granting relief to the Barretts is reversed. The trial court's order denying the Humphreys' motion to reconsider is therefore also reversed, and the case is remanded for further proceedings consistent with this Opinion.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, C.J., and BARNES, P.J., concur.